572 S.E.2d 881

**Bradley S. ROHRBAUGH, Plaintiff Below, Appellant,**

v.

**WAL–MART STORES, INC., A Delaware Corporation; Greg Sharp; John Wilshere; and Sherry Harper, Defendants Below, Appellees.**

No. 30441.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 2002.

Decided Oct. 11, 2002.

---

360

Michael J. Florio, Esq., Florio Law Offices, Clarksburg, for Appellant.

Sandra K. Law, Esq., Schrader, Byrd & Companion, Wheeling, for Appellees.

DAVIS, Chief Justice.

Bradley Rohrbaugh, appellant/plaintiff below (hereinafter referred to as "Mr. Rohrbaugh"), appeals an order entered by the Circuit Court of Harrison County denying his motion for a new trial. Mr. Rohrbaugh filed an action against Wal–Mart Stores, Inc., appellee/defendant below (hereinafter referred to as "Wal–Mart"),[1] alleging invasion of privacy, disability discrimination and workers' compensation discrimination. The jury returned a verdict in favor of Mr. Rohrbaugh on the invasion of privacy claim, finding that he was entitled to punitive damages even though he was not awarded compensatory damages. On the remaining two discrimination claims, the jury returned a verdict in favor of Wal–Mart. Here, Mr. Rohrbaugh seeks a new trial on damages for the invasion of privacy claim. He also seeks a new trial on damages and liability for the disability discrimination and workers' compensation discrimination claims. After reviewing the briefs and record in this case, we reverse the denial of a new trial on damages for the invasion of privacy claim. However, we affirm the circuit court's denial of a new trial on the disability discrimination and workers' compensation discrimination claims.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Rohrbaugh was hired by Wal–Mart at its Clarksburg store, in August of 1997.[2]

1. The complaint also named three management employees of Wal–Mart as defendants.

2. We are compelled to comment at this point on the brief filed by Mr. Rohrbaugh. The appel-

Although he was first hired to work in Wal–Mart's lawn and garden department, Mr. Rohrbaugh ultimately worked as a "stocker" in the store's toy department.

Although Wal–Mart initially considered Mr. Rohrbaugh's work performance to be excellent, he nevertheless exhibited attendance problems.[3] Following the back injury he incurred at work on February 9, 2000, Mr. Rohrbaugh's attendance problems worsened, and his excellent standing as a Wal–Mart employee declined. Several days after the injury, Wal–Mart referred Mr. Rohrbaugh to a physician for an examination and for drug and alcohol testing. Although there was no indication that Mr. Rohrbaugh used drugs or alcohol, Wal–Mart had a policy of having all injured workers undergo such testing. The physician reported that Mr. Rohrbaugh could, with certain limitations, return to work on February 19, 2000. Mr. Rohrbaugh could not lift anything heavier than fifteen pounds and could walk only four hours per day.[4] The physician also reported that there was no indication of drug or alcohol use by Mr. Rohrbaugh.[5] Also as a result of this injury, Mr. Rohrbaugh filed a workers' compensation claim, which was not contested by Wal–Mart. Nevertheless, Mr. Rohrbaugh was awarded no temporary or permanent partial disability benefits.

After Mr. Rohrbaugh's injury, he appears to have continued his pattern of attendance problems. On February 25, 2000, two of Mr. Rohrbaugh's superiors met with him and told him that he had one "last chance" to improve his attendance.[6] Despite the warning, Mr. Rohrbaugh's work attendance did not improve to the satisfaction of Wal–Mart. Thus, on March 27, 2000, Mr. Rohrbaugh was terminated because of excessive lateness and absences.

Following his termination, Mr. Rohrbaugh filed the instant action against Wal–Mart alleging his right to privacy had been invaded by the requirement that he undergo blood and alcohol tests and that his termination constituted disability discrimination and workers' compensation discrimination.[7] The case was tried before a jury on June 5, 2001.[8] On June 8, a jury returned a verdict finding no disability discrimination or workers' compensation discrimination attended Mr. Rohrbaugh's termination. However, the jury concluded that Wal–Mart did invade Mr. Rohrbaugh's privacy by requiring the blood and alcohol tests. The jury also found that Mr. Rohrbaugh was not entitled to compensatory damages, but that he was entitled to punitive damages as a result of the inva-

lant's brief herein contains approximately 22 pages devoted solely to a "Statement of Facts". In view of the nature of the assignments of error in this case, the facts relevant to this appeal could have been iterated in far fewer pages as the vast majority of Mr. Rohrbaugh's "Statement of Facts" has no relevancy to the resolution of the assignments of error he has raised. We comment upon this matter because Mr. Rohrbaugh sought, and obtained, permission from this Court to exceed the page limit requirement for briefs. Had Mr. Rohrbaugh written his brief succinctly, however, he would not have exceeded this limitation. " '*We do not wish to be perceived as "sticklers, precisians, nitpickers, or sadists. But in an era of swollen appellate dockets, courts are entitled to insist*" on diligence and good faith efforts from the practicing bar so that the appellate decisional process can proceed as it should.' " *Coleman v. Sopher*, 194 W.Va. 90, 96, 459 S.E.2d 367, 373 (1995) (quoting *Avitia v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1224 (7th Cir.1995) (emphasis in original)).

3. Prior to his injury, Mr. Rohrbaugh seems to have had some work attendance problems. On June 8, 1999, Wal–Mart imposed a "Decision Making Day" on Rohrbaugh, which meant that

his attendance had to improve or he could be terminated. The record suggests that Rohrbaugh continued to have attendance problems; yet, Wal–Mart did not discipline him therefor.

4. The physical restrictions appear to have been imposed for a period of two weeks.

5. The blood and alcohol testing occurred on February 17, 2000, and involved the use of a needle to extract blood from Mr. Rohrbaugh. He was also required to provide a urine sample.

6. Mr. Rohrbaugh's brief contends that the "last chance" warning was inappropriate because he was not absent for the two-day period that prompted the warning.

7. Mr. Rohrbaugh also brought a Wage Payment and Collection Act claim against Wal–Mart, which has since been settled by the parties.

8. The trial judge bifurcated the issue of punitive damages in the case, ruling that the jury would only hear evidence of punitive damages if a verdict was returned in favor of Mr. Rohrbaugh.

sion of privacy claim. From this jury verdict, the trial court determined that because no compensatory damages had been awarded, a hearing on punitive damages was not required. Mr. Rohrbaugh filed post-trial motions, which the trial court denied. From these adverse rulings, Mr. Rohrbaugh now appeals.

## II.

## STANDARD OF REVIEW

■ In this proceeding we have been called upon to review the trial court's denial of Mr. Rohrbaugh's motion for a new trial as to damages on his invasion of privacy claim, and as to liability and damages on the disability discrimination and workers' compensation discrimination claims. This Court has held that,

> [a]lthough the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). We have also more succinctly held that, in examining an order denying a new trial, we review "the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of

9. Wal–Mart contends that Mr. Rohrbaugh waived this issue because he failed to raise the matter with the trial court. We disagree. The issue was raised before the trial court and tentatively resolved as follows:

> THE COURT: Unless you have some other thoughts, I think what I'm going to do is accept this verdict, discharge the Jury, and then give you some time to look at this issue as far as whether or not this might constitute a basis for The Court to set aside the verdict and grant a new trial based on this one (1) issue. I don't know, I mean, the cases seem to say that there has to be an award of compensatory damages and that was my recollection of the law.

10. The jury was not required to set an amount for punitive damages because that issue was bifurcated.

11. This Court held in Syllabus point 1 of *Twigg v. Hercules Corp.*, 185 W.Va. 155, 406 S.E.2d 52 (1990), that "[i]t is contrary to public policy in

fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" Syl. pt. 4, *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996). With these standards set forth, we now turn to the issues before us.

## III.

## DISCUSSION

### A. Awarding Punitive Damages Without Compensatory Damages

■ The first issue we must address involves the verdict rendered by the jury on Mr. Rohrbaugh's cause of action for invasion of privacy.[9] The trial court submitted a verdict form to the jury which asked the jury to determine liability and compensatory damages, and to answer the question of whether or not Mr. Rohrbaugh was entitled to receive punitive damages for the invasion of privacy claim.[10] The jury then rendered a verdict finding Wal–Mart violated Mr. Rohrbaugh's right to privacy by subjecting him to blood and alcohol tests.[11] However, the jury determined that Mr. Rohrbaugh was not entitled to compensatory damages. In spite of failing to award compensatory damages, the jury responded that Mr. Rohrbaugh was entitled to receive punitive damages. Mr. Rohrbaugh moved the court for a new trial on the issue of such damages, which motion the trial court denied. In doing so, the trial court ruled that compensatory damages are not

West Virginia for an employer to require an employee to submit to drug testing since such test portends an invasion of an individual's right to privacy." The decision in *Twigg* set out the exception to this public policy as follows:

> Drug testing will not be found to be violative of public policy grounded in the potential intrusion of a person's right to privacy where it is conducted by an employer based upon reasonable good faith objective suspicion of an employee's drug usage or while an employee's job responsibility involves public safety or the safety of others.

Syl. pt. 2, *Twigg, id.* Wal–Mart has not made a cross-assignment of error challenging the jury determination that it violated Mr. Rohrbaugh's right to privacy in this regard. Therefore, we will not review the record to determine whether the evidence supported the jury's determination of liability.

presumed. The trial court further determined that, under this Court's decision in *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), there could be no award of punitive damages when compensatory damages had not been awarded.

Although the trial court was correct in finding that *Garnes* prohibits an award of punitive damages when there has not been an award of compensatory damages, the trial court was wrong in holding that *Garnes* precluded a new trial on damages. *Garnes* involved a nuisance action, wherein a jury awarded the plaintiffs punitive damages, but not compensatory damages. Under the law existing at the time of the *Garnes* jury's verdict, this Court had held, in Syllabus point 3, in part, of *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), that "the failure of the jury to return an award of compensatory damages against a particular defendant will not of itself allow that defendant to escape liability for punitive damages assessed against him." *Garnes* ultimately overruled *Wells* and held that a jury could not be allowed "to return punitive damages without finding compensatory damages[.]" Syl. pt. 1, in part, *Garnes,* 186 W.Va. 656, 413 S.E.2d 897.

Unlike the trial court's ruling in the case *sub judice,* the remedy provided in *Garnes* was not that of vacating the jury's award of punitive damages and granting judgment for the defendant. Rather, *Garnes* reversed the judgment for the plaintiffs and awarded a new trial to the defendant.[12] Here, however, the trial court, in effect, vacated the jury's determination that Mr. Rohrbaugh was entitled to punitive damages and granted judg-

ment to Wal–Mart. *Garnes* does not support such a disposition.[13]

█ Mr. Rohrbaugh additionally argues that this Court's decision in *Payne v. Gundy,* 196 W.Va. 82, 468 S.E.2d 335 (1996), required the trial court to grant his motion for a new trial on damages. *Payne* involved a civil action for assault and battery that was brought by a woman against the man with whom she had cohabited. The jury returned a verdict awarding the plaintiff punitive damages, but not compensatory damages. The plaintiff moved for a new trial on damages, which the trial court denied, and from which the plaintiff appealed. This Court reversed and awarded the plaintiff a new trial on damages.[14] In doing so, *Payne* relied upon Syllabus point 3 of *Biddle v. Haddix,* 154 W.Va. 748, 179 S.E.2d 215 (1971), wherein we stated:

> In a civil action for recovery of damages for personal injuries in which the jury returns a verdict for the plaintiff which is manifestly inadequate in amount and which, in that respect, is not supported by the evidence, a new trial may be granted to the plaintiff on the issue of damages on the ground of the inadequacy of the amount of the verdict.

Responding to Mr. Rohrbaugh's argument, Wal–Mart contends that *Payne* is distinguishable because there was evidence of injury proven in *Payne.* In this regard, Wal–Mart asserts that Mr. Rohrbaugh failed to present any evidence of harm stemming from the invasion of privacy, and, consequently, he was not entitled to an award of damages.

**12.** The defendant filed the appeal in *Garnes.*

**13.** Our decision in *Garnes* is distinguishable from our ruling in *LaPlaca v. Odeh,* 189 W.Va. 99, 428 S.E.2d 322 (1993) (per curiam). In *LaPlaca,* the plaintiff brought a battery action against an employee and an employer. The claim against the employer was based on vicarious liability. Additionally, the defendant employee filed a counterclaim against the plaintiff. The jury then returned a verdict for the employee, awarding him damages for his counterclaim. The jury also returned a verdict imposing punitive damages on the employer, but did not award compensatory damages. This Court reversed the award of punitive damages against the employer, stating that

"[s]ince the jury found [the employee] blameless from a legal point of view, and even entitled to a recovery, even if [the employer] had ratified his actions, that would have given rise to no imputation of liability to [the employer]." *LaPlaca,* 189 W.Va. at 101, 428 S.E.2d at 324. In other words, the jury did not find liability against the employee, therefore the employer could not be held vicariously liable. Consequently no damages, punitive or compensatory, could be imposed against the employer.

**14.** Other issues were involved in *Payne* that are not relevant to this case.

We disagree.[15]

The issue of damages for invasion of privacy is addressed in Section 652H of the Restatement (Second) of Torts (1977), which provides:

> One who has established a cause of action for invasion of his privacy is entitled to recover damages for
>
> (a) the harm to his interest in privacy resulting from the invasion;
>
> (b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and
>
> © special damage of which the invasion is a legal cause.[16]

(Footnote added). A majority of courts addressing the issue have adopted the Restatement's position on damages. *See, e.g., Jonap v. Silver,* 1 Conn.App. 550, 474 A.2d 800 (1984); *Schmidt v. Ameritech Illinois,* 329 Ill.App.3d 1020, 263 Ill.Dec. 543, 768 N.E.2d 303 (2002); *Monroe v. Darr,* 221 Kan. 281, 559 P.2d 322 (1977); *Fischer v. Hooper,* 143 N.H. 585, 732 A.2d 396 (1999); *Leggett v. First Interstate Bank of Oregon,* 86 Or.App. 523, 739 P.2d 1083 (1987); *West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640 (Tenn. 2001); *Reid v. Pierce County,* 136 Wash.2d 195, 961 P.2d 333 (1998). However, a minority of courts have not limited recovery to the Restatement's formulation of damages. These courts have held that if the plaintiff failed to prove actual injury, the plaintiff is nevertheless entitled to recover nominal damages. *See, e.g., Doe v. High–Tech Inst.,*

*Inc.,* 972 P.2d 1060, 1066 (Colo.Ct.App.1999); *Sabrina W. v. Willman,* 4 Neb.App. 149, 540 N.W.2d 364, 371 (1995); *Wecht v. PG Publ'g Co.,* 725 A.2d 788, 792 (Pa.Super.1999); *Snakenberg v. Hartford Cas. Ins. Co.,* 299 S.C. 164, 383 S.E.2d 2, 6 (App.1989). *See also* Speiser, Krause & Gans, *Torts,* § 30:8, at 872 ("Nominal damages may be awarded when the evidence negatives any substantial harm.").[17]

In the final analysis, we believe that the better rule to follow is that of allowing recovery for nominal damages when no actual injury is shown in an invasion of privacy action. We take this position for a fundamental reason. "For every wrong there is supposed to be a remedy somewhere." *Sanders v. Meredith,* 78 W.Va. 564, 572, 89 S.E. 733, 736 (1916) (Lynch, J., dissenting). Indeed, "the concept of American justice ... pronounces that for every wrong there is a remedy. It is incompatible with this concept to deprive a wrongfully injured party of a remedy[.]" *O'Neil v. City of Parkersburg,* 160 W.Va. 694, 697, 237 S.E.2d 504, 506 (1977). *See also Gardner v. Buckeye Sav. & Loan Co.,* 108 W.Va. 673, 680, 152 S.E. 530, 533 (1930) ("It is the proud boast of all lovers of justice that for every wrong there is a remedy."); Syl. pt. 3, *Johnson v. City of Parkersburg,* 16 W.Va. 402 (1880) ("When the Constitution forbids a Damage to private property and points out no remedy, and no statute gives a remedy for the invasion of the right of property thus secured, the common law, which gives a remedy for every wrong,

---

**15.** It is generally recognized that "[d]amages suffered as a result of tortious invasion of one's right to privacy depend primarily on which particular element of privacy has been invaded." Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts,* § 30:8, p. 871 (1991). We have indicated that "there are four types of invasion of privacy, any one of which may be the basis of a cause of action." *Greenfield v. Schmidt Baking Co., Inc.,* 199 W.Va. 447, 460, 485 S.E.2d 391, 404 (1997). In *Crump v. Beckley Newspapers, Inc.,* 173 W.Va. 699, 320 S.E.2d 70 (1983), this Court adopted the four types of invasion of privacy enumerated in the Restatement (Second) of Torts §§ 652A–652–E (1977), as follows:

> An "invasion of privacy" includes (1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity

given to another's private life; and (4) publicity that unreasonably places another in a false light before the public.

Syl. pt. 8, *Crump,* 173 W.Va. 699, 320 S.E.2d 70. In the instant proceeding, it is clear that Mr. Rohrbaugh's cause of action involves the "intrusion" element of the tort of invasion of privacy.

**16.** *See* note 18, *infra,* for the meaning of special damages.

**17.** The Restatement has not affirmatively precluded recovery of nominal damages. In commentary "c" of § 652H of the Restatement it states "[w]hether in the absence of proof of actual harm an action might be maintained for nominal damages remains uncertain." The commentary then references to § 620 of the Restatement, involving defamation, which expressly allows nominal damages.

will furnish the appropriate action for the redress of such grievances."). To permit a defendant to engage in conduct that constitutes an invasion of a plaintiff's privacy, but prevent the plaintiff from recovering damages because no compensatory damages are shown, is an illogical and unacceptable result. "As for public policy, the strongest policy which appeals to us is that fundamental theory of the common law that for every wrong there should be a remedy." *Lambert v. Brewster*, 97 W.Va. 124, 138, 125 S.E. 244, 249 (1924).

■■ Thus, we hold that when a plaintiff has established liability for invasion of privacy, the plaintiff is entitled to recover damages for (1) the harm to his/her interest in privacy resulting from the invasion; (2) his/her mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; (3) special damages of which the invasion is a legal cause; [18] and (4) if none of the former damages is proven, nominal compensatory damages are to be awarded.[19]

In the instant proceeding, the jury found that Wal–Mart violated Mr. Rohrbaugh's right of privacy, but that there was insufficient evidence to award compensatory damages. Under our holding, the jury should have, at a minimum, awarded Mr. Rohrbaugh nominal compensatory damages. Therefore, the trial court committed reversible error in denying Mr. Rohrbaugh's motion for a new trial on damages for the invasion of privacy claim.

### B. Evidentiary Rulings

■ **1. Evidence regarding other injured employees.** Mr. Rohrbaugh next argues that the trial court committed error by allowing Wal–Mart to introduce evidence of its treatment of other employees who had sustained back injuries. Wal–Mart contends that evidence of treatment of other similarly situated employees was necessary and admissible. In fact, Mr. Rohrbaugh actually introduced evidence alleging he was fired because he filed a workers' compensation claim. We agree that such evidence was admissible.

We have held that "[r]ulings on the admissibility of evidence . . . are committed to the discretion of the trial court." *McDougal v. McCammon*, 193 W.Va. 229, 235, 455 S.E.2d 788, 794 (1995). In the instant case, the trial court found that counsel for Mr. Rohrbaugh opened the door for the admissibility of evidence because Mr. Rohrbaugh presented evidence that other Wal–Mart employees with back injuries filed workers' compensation claims and were not fired. The trial court addressed the issue during a sidebar discussion:

> THE COURT: Well, I think what I'm going to do—I think after hearing the evidence, the way its [sic] come out—Mr. Florio, you presented evidence to show that the motive here, that the reason for the termination was the Workers' Comp injury, and that these managers, or at least Mr. Sharp, had a motive for that because when there's a Workers' Comp injury up to Fifteen Thousand Dollars ($15,000.00), the medical expenses can be charged as an expense to that store which reduces the profit, which, in turn, reduces his bonus.
>
> So I think that's been opened up and I think it's fair to ask him about other ones. And as far as the back injury is concerned, the way the evidence developed is that— and I think the way you set this up in your Opening was that someone with a back injury is either going to have problems in the future and that's a reason why they want to get rid of a person like that, so I think I'm going to let that in with respect to the back injuries.

■ The trial court's basis for allowing the evidence complained of was premised upon Mr. Rohrbaugh's counsel having opened the door for such evidence. Our review of the record supports the trial court's finding.

---

18. "Special damages" refers to any actual monetary loss that may have been suffered.

19. A plaintiff "may be entitled to recover punitive damages if he shows that he suffered at least nominal damage[.]" *Surrency v. Harbison*, 489

So.2d 1097, 1105 (Ala.1986). However, "[a]s a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages." *Garnes*, 186 W.Va. at 668, 413 S.E.2d at 909.

Consequently, Mr. Rohrbaugh cannot now complain of error about matters he placed into evidence during his case-in-chief. " 'A judgment will not be reversed for any error in the record introduced by or invited by the party seeking reversal.' " Syl. pt. 4, *State v. Johnson*, 197 W.Va. 575, 476 S.E.2d 522 (1996) (quoting Syl. pt. 21, *State v. Riley*, 151 W.Va. 364, 151 S.E.2d 308 (1966)). *See also In re Tiffany Marie S.*, 196 W.Va. 223, 233, 470 S.E.2d 177, 187 (1996) ("[W]e regularly turn a deaf ear to error that was invited by the complaining party."); *Shamblin v. Nationwide Mut. Ins. Co.*, 183 W.Va. 585, 599, 396 S.E.2d 766, 780 (1990) ("[An] appellant cannot benefit from the consequences of error it invited.").

■ **2. Evidence of driver's license.** The next evidentiary ruling complained of concerns Wal–Mart's elicitation, during trial, of testimony from Mr. Rohrbaugh that he did not have a driver's license. Mr. Rohrbaugh contends that the trial court committed error by allowing this evidence. Wal–Mart introduced this evidence on the issue of Mr. Rohrbaugh's mitigation of damages following his termination. That is, Wal–Mart argued that Mr. Rohrbaugh's "lack of a driver's license would limit the number of jobs [he] would be able to obtain[.]"

This Court addressed the issue of mitigation of damages in Syllabus point 4 of *Paxton v. Crabtree*, 184 W.Va. 237, 400 S.E.2d 245 (1990), as follows:

> Once a claimant establishes a prima facie case of discrimination and presents evidence on the issue of damages, the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant. The defendant may satisfy his burden only if he establishes that: (1) there were substantially equivalent positions which were available; and (2) the claimant failed to use reasonable care and diligence in seeking such positions.

To the extent that Wal–Mart sought to carry its burden under *Paxton*, the issue of Mr. Rohrbaugh's lack of a driver's license was relevant. This Court observed in Syllabus point 4 of *Gable v. The Kroger Co.*, 186 W.Va. 62, 410 S.E.2d 701 (1991), that "Rules 402

and 403 of the West Virginia Rules of Evidence direct the trial judge to admit relevant evidence, but to exclude evidence whose probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

■ Mr. Rohrbaugh contends that the evidence was prejudicial because it "invited the jury to speculate regarding the underlying reason" for not having a driver's license.[20] We do not believe the cross-examination which brought out the fact that Mr. Rohrbaugh did not have a driver's license would lead to the prejudicial speculation Mr. Rohrbaugh suggests might have occurred. During cross-examination of Mr. Rohrbaugh, by Wal–Mart, the following testimony was elicited regarding the lack of a driver's license:

> COUNSEL: Where did you graduate from high school?
>
> WITNESS: I didn't.
>
> COUNSEL: Do you have a GED?
>
> WITNESS: No, ma'am.
>
> COUNSEL: Do you have a driver's license?
>
> WITNESS: Excuse me?
>
> COUNSEL: Do you have a driver's license?
>
> WITNESS: Right now? No, ma'am.
>
> COUNSEL: You indicated that you had quit the job at Infocision that you got after Wal–Mart, just recently, correct?
>
> WITNESS: Yes, ma'am.

We simply do not find any undue prejudice from the admission of this relevant evidence.

■ **3. Evidence of conduct with other employer.** Lastly, Mr. Rohrbaugh contends that the trial court committed error by allowing Wal–Mart to introduce evidence of his attendance record with Infocision, an employer he worked for subsequent to his termination. Wal–Mart contends that this evidence was relevant to the issue of mitigation of damages. That is, Mr. Rohrbaugh's absences and lateness with Infocision negatively impacted his income after being terminated by Wal–Mart. During cross-examination of Mr. Rohrbaugh, the following evidence was adduced regarding his work attendance at Infocision:

**20.** Mr. Rohrbaugh's driver's license was suspended for DUI.

COUNSEL: Did you ever leave early while you worked at Infocision?

WITNESS: Yes, ma'am.

COUNSEL: Did you ever leave early probably more than ten (10) times while you worked at Infocision?

WITNESS: Yes.

COUNSEL: Did you ever come in late?

WITNESS: Yes.

COUNSEL: Did you ever just not show up at all while you worked at Infocision?

WITNESS: Yes.

COUNSEL: Did you ever call off while you were at Infocision?

WITNESS: Yes.

Mr. Rohrbaugh contends that this evidence was irrelevant because he was not terminated by Infocision. Therefore, he continued to mitigate his damages. We believe Mr. Rohrbaugh misunderstands our law on the issue of mitigation of damages.

In Syllabus point 2 of *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982), this Court addressed the issue of mitigation of damages as follows:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

The important language from *Mason County* concerns the deduction of mitigating wages the employee received or *could have received*. *Mason County* instructs that, for the purposes of a backpay award by a jury, a trial court may deduct from a verdict all wages a plaintiff could have received through reasonable efforts. *See id.* Consequently, it is not enough that Mr. Rohrbaugh was employed with Infocision and made "X" dollars. If Wal–Mart would have established that

Mr. Rohrbaugh could have made "Y" dollars at Infocision if his attendance had been reasonable, such evidence also would have been relevant to the mitigation issue. As we said in *Mason County*, "the wrongfully discharged employee ... must be prepared to demonstrate that he or she did not make a voluntary decision not to work[.]" *Mason County*, 170 W.Va. at 638, 295 S.E.2d at 725–26. Clearly Wal–Mart's cross-examination of Mr. Rohrbaugh, concerning his work attendance at Infocision, was relevant to establishing his "voluntary" decision not to fully mitigate his damages by attending work regularly. Therefore, we affirm the trial court's ruling in this regard.

## C. Bifurcation

■ Mr. Rohrbaugh finally argues that the trial court committed error by *sua sponte* bifurcating the issue of the amount of punitive damages.[21] During the proceedings underlying the instant appeal, the trial court determined that the jury would first decide liability on the underlying claims, compensatory damages, and whether punitive damages should be awarded. If each of these determinations were favorable to Mr. Rohrbaugh, the same jury would then hear evidence involving the amount of punitive damages to be awarded.[22]

■ Generally, trial courts are permitted broad discretion in managing their cases and deciding bifurcation matters. Rule 42(c) of the West Virginia Rules of Civil Procedure provides that "[t]he court, in furtherance of convenience or to avoid prejudice ... *may order* a separate trial of any ... separate issue[.]" (Emphasis added). That is not to say, however, that bifurcation is appropriate in every instance. Rather, a showing must be made that a separation of litigation is warranted under the circumstances of the particular case:

> parties moving for separate trials of issues ..., or the court if acting *sua sponte, must provide sufficient justification* to establish for review that informed discretion could have determined that the bifurcation would promote the recognized goals of judicial

---

**21.** This issue is presented in the context of Mr. Rohrbaugh's request for a new trial on his claims for workers' compensation discrimination and disability discrimination.

**22.** Wal–Mart sought bifurcation of both aspects of the punitive damages issue. The trial court, however, bifurcated only the issue of the amount of punitive damages.

economy, convenience of the parties, and the avoidance of prejudice, the overriding concern being the provision of a fair and impartial trial to all litigants.

*Bennett v. Warner,* 179 W.Va. 742, 748, 372 S.E.2d 920, 926 (1988) (emphasis added). Once a trial court has so ruled, this Court "will not interfere with a bifurcation decision in the absence of an abuse of . . . discretion." *Id.* (citation omitted).

In the instant case, it appears that the trial court decided to bifurcate the amount of punitive damages issue in order "to prevent the jury from being influenced on the substantive claim by evidence of Wal–Mart's enormous wealth, which data would have been introduced in order to enable the jury to gauge the amount of punitive damages to be awarded." We believe that the trial court's basis for granting bifurcation was consistent with its discretion under Rule 42(c). Accordingly, we find no abuse of the trial court's discretion.[23]

## IV.

## CONCLUSION

We reverse the trial court's denial of a new trial on damages for the invasion of privacy

claim. However, we affirm the denial of a new trial on the disability discrimination and workers' compensation discrimination claims.

Affirmed, in part; Reversed, in part; and Remanded.

---

**23.** During our consideration of the case *sub judice,* we have had occasion to revisit our discussion of the law of bifurcation in certain of our previous decisions. In *Roberts v. Consolidation Coal Co.,* 208 W.Va. 218, 238, 539 S.E.2d 478, 498 (2000), we construed Justice Miller's dissenting opinion in *Mooney v. Eastern Associated Coal Corp.,* 174 W.Va. 350, 355, 326 S.E.2d 427, 432 (1985). We observed, in *Roberts,* that the *Mooney* dissent's suggestion to establish a procedure whereby the liability and damages portion of a deliberate intention action would be bifurcated from the workers' compensation offset determination "has not, however, been adopted as a *required* method of procedure in deliberate intention cases." *Roberts,* 208 W.Va. at 238, 539 S.E.2d at 498 (emphasis added). An examination of the *Mooney* dissent, however, suggests that the majority of the Court joined in Justice Miller's separate opinion, therefore giving credence to the notion that such a procedure, had, effectively, been embraced by this Court, albeit not through an official pronouncement of law in the Opinion's Syllabus. *See* W. Va. Const. art. VIII, § 4, in part ("No decision rendered by the [Supreme] court [of appeals] shall be considered as binding authority upon any court, except in the particular case decided, unless a majority of the justices of the court concur in such decision."). *Compare* Syl. pts. 1–3, *Mooney,* 174

W.Va. 350, 326 S.E.2d 427 (failing to establish procedure for bifurcating workers' compensation offset in deliberate intention actions) *with Mooney,* 174 W.Va. at 358, 326 S.E.2d at 435 (Miller, J., dissenting) (indicating that Chief Justice Neely joins in Justice Miller's dissent, and that Justices McGraw and McHugh concur in that portion thereof discussing the bifurcation issue). Nevertheless, our observation in *Roberts* was a technically accurate statement of the law in that, as of the writing of *Roberts,* there had been no *formal* recognition of such a standard in a Syllabus point by the Court. *See, e.g.,* W. Va. Const. art. VIII, § 4, in part (directing that "it shall be the duty of the [supreme] court [of appeals] to prepare a syllabus of the points adjudicated in each case in which an opinion is written and in which a majority of the justices thereof concurred, which shall be prefixed to the published report of the case"); Syl. pt. 2, *Walker v. Doe,* 210 W.Va. 490, 558 S.E.2d 290 (2001) ("This Court will use signed opinions when new points of law are announced and *those points will be articulated through syllabus points as required by our state constitution.*" (emphasis added)). Beyond this clarification of our prior discussion, however, we need not venture as the aforementioned point of law is not determinative of the resolution of the instant appeal.