600 S.E.2d 340

**Patrice GREEN, Executrix of the Estate of Francis Green, Deceased, Plaintiff Below, Appellant**

**v.**

**CHARLESTON AREA MEDICAL CENTER, INC., DBA Charleston Area Medical Center, a West Virginia Corporation; and Charleston Emergency Physicians, Inc., a West Virginia Corporation, Defendants Below, Appellees**

**and**

**Patrice Green, Executrix of the Estate of Francis Green, Deceased, Plaintiff Below, Appellant**

**v.**

**Edward Wright, M.D., Third–Party Defendant Below, Appellee.**

No. 31122.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 14, 2004.

Decided June 29, 2004.

Maynard, C.J., dissented.

Carole A. Lewis Bloom, Esq., Guy R. Bucci, Esq., Bucci, Bailey & Javins, L.C., Charleston, Wayne R. Spivey, Pro Hac Vice, V. Paul Bucci, II, Pro Hac Vice, Shrager, Spivey & Sachs, Philadelphia, PA, for Appellant.

Dina M. Mohler, Esq., Rita Massie Biser, Esq., Kay Casto & Chaney, LLC, Charleston, for Charleston Area Medical Center, Appellee.

John F. McCuskey, Esq., Roberta F. Green, Esq., Shuman, McCuskey & Slicer, Charleston, for Edward Wright, M.D., Appellee.

PER CURIAM.

This is an appeal by Patrice Green, Executrix of the Estate of Francis Green, deceased, from an order of the Circuit Court of Kanawha County, denying the appellant a new trial in a wrongful death action. On appeal, the appellant claims that an attorney for one of the appellees made inappropriate and prejudicial remarks during his opening and closing statements and that consequently the trial court should have awarded a new trial. The appellant also claims that the circuit court made certain erroneous evidentiary rulings.

## I.

### FACTS

The appellant's decedent, who during trial was referred to as Freddie Grounds, was a mild hemophiliac who was injured on March 4, 1983, when a mining timber struck him in the chest. Shortly after the accident, he was taken to Charleston Area Medical Center where he was treated at approximately 4:00 a.m. on March 5, 1983, by Dr. Edward Wright, the Charleston Area Medical Center's emergency room physician. Dr. Wright administered a blood product called "factor concentrate" to Mr. Grounds because Mr. Grounds was a hemophiliac. The factor concentrate had been manufactured, or prepared, by Cutter Laboratories, which at the time of this action, was a part or division of Bayer Corporation. The blood from which the factor concentrate had been manufactured had been collected by the American Red Cross, not by Cutter Laboratories.

Prior to the time Dr. Wright administered the factor concentrate to Mr. Grounds, a suspicion had developed among some members of the medical community that the disease AIDS was somehow connected with, or communicated by, a virus or constituent of human blood. This suspicion had come to the attention of Cutter Laboratories, and an attorney for Cutter Laboratories had mentioned it in a memorandum which was subsequently referred to as the "Cutter Memo." The suspicion had also come to the attention of the National Hemophilia Foundation.

After issuance of the "Cutter Memo," Cutter Laboratories failed to issue an immediate warning relating to the potential problem. The National Hemophilia Foundation, on the other hand, in December 1982, issued a circular to certain physicians involved in the treatment of hemophiliacs notifying them of the potential connection between human blood products and the transmission of the disease AIDS.

There is no indication that the Charleston Area Medical Center or Dr. Edward Wright, its emergency room physician, directly received the National Hemophilia Foundation circular or knowledge that there was a possible connection between human blood products and the disease AIDS prior to the time that Dr. Wright administered the factor concentrate to Freddie Grounds on March 5, 1983. However, the Charleston Area Medical Center provided space, at no charge, to a hemophilia clinic operated by certain physicians in Charleston, West Virginia. A principal figure in the hemophilia clinic was Dr. Steven Jubelirer, an employee of West Virginia University, and a full time faculty member at the University's medical school. Dr. Jubelirer received a copy of the National Hemophilia Foundation's December 1982 circular and apparently was aware of the possible link between the disease AIDS and human blood products prior to the time Dr. Wright administered the factor concentrate to Freddie Grounds. Dr. Jubelirer, however, had not disseminated the information to the physicians at the Charleston Area Medical Center.

After receiving the factor concentrate, Freddie Grounds developed the disease AIDS and subsequently died of the disease. The appellant instituted the present wrongful death action to recover damages for the death. The appellant sued Bayer Corpora-

tion, for the defective manufacture of the factor concentrate and for failing to warn of its hazard. The appellant also sued Dr. Edward Wright for the negligent administration of the product, and also the Charleston Area Medical Center. To establish the negligence of Charleston Area Medical Center, the appellant took the position that Dr. Jubelirer, of the hemophilia clinic, although not an actual employee of the Charleston Area Medical Center, was an apparent agent of the Charleston Area Medical Center since he participated in the activities of the hemophilia clinic in space provided by the Charleston Area Medical Center. The appellant claimed that Dr. Jubelirer, as an apparent agent, had a duty to warn the Charleston Area Medical Center of the AIDS hazard of factor concentrate as communicated to him by the National Hemophilia Foundation, that he failed to transmit the warning, and that his negligence in failing to transmit the warning was negligence imputable to the Charleston Area Medical Center.

After the appellant instituted the action, but before trial, Bayer Corporation entered into a settlement with the appellant and, as a consequence, Bayer Corporation and its Cutter Laboratories division were absent from, and did not participate in, the actual trial of the case.

After extensive development, the case went to trial before a jury in August 2000. In the course of the trial, the trial judge made certain rulings which the appellant claims were prejudicial. First, the appellant claims that the trial court improperly allowed the attorney for Dr. Edward Wright to make improper and prejudicial remarks during his opening and closing statements. Secondly, the appellant claims that the trial court erred in refusing to admit the testimony of Elaine Husted, Ph.D., testimony which suggested that the Charleston Area Medical Center had a legal duty to warn of the hazards of factor concentrate. Finally, the appellant claims that the circuit court erred in allowing the admission of the "Cutter Memo" into evidence. As a consequence of these alleged errors, the appellant claims that the trial court should have granted a new trial.

## II.

## STANDARD OF REVIEW

As a general rule, this Court has indicated that the ruling of a trial court denying a new trial will be reversed if the court acted under some misapprehension of the law or evidence. Specifically, the Court stated in Syllabus Point 1 of *Rohrbaugh v. Wal–Mart Stores, Inc.*, 212 W.Va. 358, 572 S.E.2d 881 (2002), that: " 'Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syllabus point 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)."

When a trial court's rulings on the propriety of remarks made during the opening or closing of a jury trial are in issue, the Court has ruled that: " 'Great latitude is allowed counsel in argument of cases, but counsel must keep within the evidence, not make statements calculated to inflame, prejudice or mislead the jury, nor permit or encourage witnesses to make remarks which would have a tendency to inflame, prejudice or mislead the jury.' Syl. pt. 2, *State v. Kennedy*, 162 W.Va. 244, 249 S.E.2d 188 (1978)." Syllabus Point 8, *Mackey v. Irisari*, 191 W.Va. 355, 445 S.E.2d 742 (1994).

Finally, where a trial court's evidentiary rulings are in issue, the Court has held in Syllabus Point 9 of *Smith v. First Community Bancshares, Inc.*, 212 W.Va. 809, 575 S.E.2d 419 (2002), that: " 'The West Virginia Rules of Evidence . . . allocate significant discretion to the trial court in making evidentiary . . . rulings. Thus, rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard.' Syllabus Point 1, in part, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995)."

## III.

## DISCUSSION

As has previously been stated, the appellant in the present proceeding claims

that the trial court erred in allowing the attorney for Dr. Edward Wright to make improper and prejudicial remarks to the jury during his opening and closing statements. The specific remarks made during opening were:

The evidence will show that the only party to this lawsuit who had any reason to suspect that the product that they were making millions of dollars selling might contain this deadly disease, that was Bayer's Cutter Laboratories operating out of Berkeley, California on the San Francisco Bay. As you will see from an internal secret corporate memorandum dated December of 1982, Cutter and Bayer suspected the risk of their product that [they] poached to patients. And they alone could have done something to prevent it. They alone knew that the blood being donated to them was coming primarily from homosexuals and drug addicts, the suspected carriers of the new unknown disease.

The remarks continued:

Dr. Wright is confident as am I, that you will conclude that this death occurred as a result of the deceitful and greedy acts of the German Bayer Corporation, and its Cutter Laboratory in Berkeley, California. It knowingly collected, processed, and sold, without any warning to unsuspecting public and blood banks through out the country.

At the conclusion of the opening statement, counsel for the appellant objected and moved for a mistrial. The court overruled that motion and allowed trial to proceed. Similar remarks were made during closing argument. Counsel for the appellant, however, failed to object to those remarks.

■ As has previously been stated, this Court has recognized that counsel should be allowed great latitude in arguing cases before a jury. Nonetheless, it is the duty of counsel to keep arguments within the evidence and to refrain from making statements calculated to claim prejudice or mislead the jury. *Mackey v. Irisari, supra.*

The Court has also held that: "[I]t is improper for counsel to argue to the jury why a party has not been brought into the lawsuit or that an absent party is solely responsible for the accident . . . ." *Groves v. Compton,* 167 W.Va. 873, 879, 280 S.E.2d 708, 712 (1981). As pointed out in *Doe v. Wal–Mart Stores, Inc.,* 210 W.Va. 664, 558 S.E.2d 663 (2001), a case decided after the trial of the action presently under consideration, an argument attributing blame to an absent party, where the evidence of that party's liability has not been fully developed, allows a jury to speculate inappropriately regarding the absent party's role in the case.[1]

In the present case, the appellant claims that the remarks made by the attorney for Dr. Wright were expressly contrary to what evidence within the clear knowledge of the attorney showed. Specifically, the appellant points out that the attorney argued that Bayer, and its Cutter division, "alone knew that the blood being donated to them was coming primarily from homosexuals and drug addicts, the suspected carriers of the new disease." The evidence, contrary to this assertion, showed that the factor concentrate that infected Mr. Grounds was from donor plasma obtained by the American National Red Cross Blood Services and not by Bayer. The appellant, in essence, claims that in the opening argument, counsel for Dr. Wright intentionally misstated the facts and did so in the context of making references to homosexuals and drug addicts for the purpose of inflaming and prejudicing the jury.

The appellant also takes the position that the opening remarks were improper and prejudicial in that they suggested that Bayer Corporation, an absent party, was solely responsible for the decedent's death where the evidence establishing Bayer's liability had not been fully developed. In effect, the appellant is asserting that the argument was speculative and plainly was violative of the requirement of *Groves v. Compton, id.*

---

1. In Syllabus Point 2 of *Doe v. Wal–Mart Stores, Inc.,* 210 W.Va. 664, 558 S.E.2d 663 (2001), the Court reiterated the essential point in *Groves v. Compton,* 167 W.Va. 873, 280 S.E.2d 708 (1981), as follows: "It is improper for counsel to make arguments to the jury regarding a party's omission from a lawsuit or suggesting that the absent party is solely responsible for the plaintiff's injury where the evidence establishing the absent party's liability has not been fully developed."

After examining the assertions made by the appellant, as well as the relevant portions of the record, this Court believes that the appellant's assertions are supported by the record. The evidence does plainly show that the blood out of which the factor concentrate involved in the present case was extracted was collected by the American Red Cross rather than by Bayer's Cutter Laboratories as asserted by Dr. Wright's counsel in the opening argument. Further, there appears to be no factual support for the assertion that Bayer alone knew that the blood being donated was coming primarily from homosexuals and drug addicts.

The Court also believes that counsel for Dr. Wright did attempt to attribute sole responsibility for Mr. Grounds' death on Bayer Corporation, an absent party. He plainly argued that only Bayer had any reason to suspect that the factor concentrate was defective, and only Bayer could have acted to reduce the risk. On the other hand, by the time trial began, Bayer was out of the case, and the evidence relating to Bayer Corporation's liability was not fully developed. In the Court's view, the argument was the blame-shifting type of argument prohibited by *Groves v. Compton, supra.*

The Court believes that the impact of the improper remarks was potentially sufficient to divert the jury's attention from the actual defendants in the case and, as a consequence, the trial court should have granted a mistrial. Also, the verdict ultimately rendered by the jury was potentially prejudiced. Consequently, the Court concludes that the judgment of the circuit court should be reversed, and that the appellant should be granted a new trial.

■ This appeal raises two other issues. The first is whether the trial court erred in refusing to allow the appellant to adduce the testimony of Dr. Husted. As has previously been indicated, the appellant proposed to elicit an expert opinion from Dr. Husted as to the duty of the Charleston Area Medical Center to warn of the hazards of factor concentrate after Dr. Jubelirer learned of the potential AIDS hazard of human blood product treatments, including factor concentrate.

The court refused to allow Dr. Husted to testify as an expert witness because in the court's judgment, the appellant failed to qualify Dr. Husted as an expert capable of rendering the type of opinion sought.

Rule 702 of the West Virginia Rules of Evidence governs the qualification of expert witnesses. That Rule provides, in part, that a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

The evidence shows that Dr. Husted was a nurse administrator with a doctorate who worked at a hospital in Pennsylvania. She specifically testified that it was not within her responsibilities at her hospital to handle dissemination of information concerning AIDS, and that she did not know what her hospital was doing in response to AIDS in the early 1980s. She did not know if her hospital stocked the type of medication administered to Mr. Grounds; she did not attend medical staff meetings; and she did not know what types of educational programs were required of the medical staff at her hospital in the early 1980s. She could not personally ever recall seeing information relating to hemophilia and AIDS prior to reviewing for the case at hand. Finally, she indicated that she, in proposing to testify, would not be relying upon any regulation, law or standard with respect to the dissemination of information in formulating her opinion.

■ As set forth in Syllabus Point 9 of *Smith v. First Community Bancshares, Inc., supra,* a trial court has discretion in making evidentiary rulings. Further, in Syllabus Point 6 of *Helmick v. Potomac Edison Company,* 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied,* 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991), the Court stated in the expert testimony area that: "The admissibility of testimony by an expert witness is a matter within the sound discretion of the trial court, and the trial court's decision will not be reversed unless it is clearly wrong."

After reviewing the testimony of Dr. Husted relating to her qualifications, this Court believes that it is debatable whether she had the type of expert background sufficient for

her to render an opinion as to the duty of a hospital to disseminate the type of warnings in issue in the present case, and that given the nature of her background and experience as revealed by her testimony, this Court does not believe that the trial court was clearly wrong in excluding her expert opinion.

█ Finally, the appellant claims that the trial court erred in admitting into evidence the so-called "Cutter Memo." The "Cutter Memo" showed that the Cutter Laboratories was aware of potential AIDS infection problems with its blood products in 1982, and that a suggestion had been raised that a warning regarding the use of the products might be appropriate.

As indicated in Syllabus Point 9 of *Smith v. First Community Bankshares, Inc., supra,* a trial court has significant discretion in making evidentiary rulings. In admitting the "Cutter Memo" into evidence, the trial court recognized that an issue in the case was what was known about the connection between AIDS and blood products at the time of the transfusion in the case. The "Cutter Memo" was relevant on this point, and, in this Court's view, given this and the overall development of the case, it has not been shown that the trial court abused its discretion in admitting the memo.[2]

Because of the statements made during argument, this Court believes that the judgment of the circuit court should be reversed and that this case should be remanded for a new trial.

Reversed and remanded.

MAYNARD, Chief Justice, dissents.

---

**2.** Having reached this conclusion, however, this Court wishes to point out that, should the "Cutter Memo" be again admitted as evidence during trial on remand, it cannot be used as a basis to suggest that Bayer was the party responsible for the injury alleged in this case. As suggested previously, the Court believes that such an argument would require undue speculation upon the part of the jury and would be improper under the holding in *Groves v. Compton, supra.*