**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1191**

---

JAMES E. ALVEY, JR.; NICHOLAS T. APPLEGARTH;
RONALD BAKER; WILLIAM S. BEADLING; SCOTT T.
BEDORE; STEVEN E. BELL; SCOTT R. BURCHFIELD;
CARL E. CARPENTER; ROBERT CUSICK; DANIEL W.
EVANS; MICHAEL R. FELSOCI; DARRICK J.
GRIFFITH; DONALD GRIFFITH; CLIFTON HORSTIN;
JAMES F. KNIGHT; MARC V. LAMBERTI; CAROL A.
LARKINS; BRIAN K. LEAS; CARLOS A. LEE; JAMES
P. LENGYEL; JAMES W. MAY; ERIC MECHLING; CARL
M. MICK, II; MICHAEL ALEX MITKO; HOWARD E.
OHLER; KAREN OLIVEIRA; ROBERT PULICE; RICHARD
PURKS; RONALD RICHARD; MICHAEL RINE; TODD M.
SIMS; SUSAN SMITH; H. MARK SWIGER; HOWARD
TOMES; RANDY URSO,

Plaintiffs - Appellants,

versus

BALL CORPORATION, a foreign corporation; DAVID
MAPLE,

Defendants - Appellees.

---

Appeal from the United States District Court for the Northern
District of West Virginia, at Wheeling. Frederick P. Stamp, Jr.,
District Judge. (CA-04-52-5)

---

Argued: November 30, 2005              Decided: January 20, 2006

---

Before MICHAEL and DUNCAN, Circuit Judges, and Walter D. KELLEY,
Jr., United States District Judge for the Eastern District of
Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** Michael James Florio, Clarksburg, West Virginia, for Appellants. Charles C. Jackson, MORGAN, LEWIS & BOCKIUS, L.L.P., Chicago, Illinois, for Appellees. **ON BRIEF:** James J. Sellitti, SELLITTI, NOGAY & MCCUNE, P.L.L.C., Weirton, West Virginia, for Appellants. Carole S. Katz, John S. Ferrer, MORGAN, LEWIS & BOCKIUS, L.L.P., Chicago, Illinois; W. Keith Tipton, BALL CORPORATION, Broomfield, Colorado, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellants, employees of a Ball Corporation ("Ball") metal food container plant in Weirton, West Virginia (collectively "Alvey"),[1] appeal from the district court's order denying their motion to remand to state court and granting Ball's motion to dismiss their civil action alleging invasion of privacy and infliction of emotional distress arising from Ball's search of their work lockers.  Appellants argue that, because the collective bargaining agreement (the "CBA") contains no reference to locker searches, adjudication of their state common law claims requires no interpretation of that agreement.  Consequently, they argue that the district court erred in concluding that § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) ("the LMRA") preempted their action.[2]  For the reasons that follow, we affirm.

---

[1]James Alvey is the named plaintiff for the employees who brought the present action against the Ball Corporation and David Maple, the plant manager of the Weirton facility.  For simplicity, we refer to the Appellants as Alvey and the Appellees as Ball.

[2]Alvey also argued before the district court and in his reply brief and oral presentation before this court that the search of his locker constituted a violation of a substantial West Virginia public policy.  He further maintained that such a public policy constitutes the very type of nonnegotiable rights that this court identified as being excepted from preemption in Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d 934, 937 (4th Cir. 1991) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 212 (1985)). We deem this argument waived because Alvey failed to raise it in his initial brief before this court.  Schlossberg v. Barney, 380 F.3d 174, 182 n.6 (4th Cir. 2004).  Even if Alvey had not waived the argument, we are persuaded by the district court's analysis concluding that no clearly defined public policy concerning the search of employee lockers exists in West Virginia.

I.

As part of an investigation into allegations of widespread sale and use of illegal drugs at the Weirton plant, Ball assigned four plant management personnel to conduct a search of all of the lockers in the facility. Although Ball owned the lockers, they were assigned to and secured by locks purchased by individual employees. Prior to searching the lockers, Ball drafted a protocol for the search and shared that protocol with representatives of the Paper, Allied-Industrial, Chemical and Energy Workers International Union ("the union"), which represents the employees. Ball personnel conducted the searches in the presence of the union representatives. A typical search involved cutting the lock securing the locker, examining the contents, returning the contents to the locker and issuing a Ball-supplied lock to secure the locker once more.

Following the locker searches, the union filed several grievances pursuant to the CBA, alleging that Ball changed existing plant policies and safety rules without bargaining with or notifying the union; the locker searches constituted an "illegal search and seizure;" and the locker searches were unsanitary because the individuals conducting the searches failed to change their gloves following the search of each locker. Less than one month later, Alvey filed the present action in state court, alleging that the locker searches constituted an invasion of

privacy and intentional and/or reckless or negligent infliction of emotional distress.

Ball removed the case to the district court and filed a motion to dismiss, maintaining that Alvey had failed to exhaust the grievance and arbitration provisions as required by the CBA.  Alvey filed a memorandum in opposition to the motion to dismiss and a motion to remand the case to the state court.  The district court concluded that Alvey, in order to prevail on his claims, would have to prove that Ball's actions had been wrongful under the circumstances, including the contractual circumstances created by the CBA.  Therefore, resolution of those claims was substantially dependent upon analysis of the terms of the CBA, resulting in preemption by § 301 of the LMRA.  It further concluded that Alvey's claims fell under the CBA grievance clause, requiring Alvey to exhaust his remedies under the CBA before seeking judicial relief.  Accordingly, it denied Alvey's motion to remand and granted Ball's motion to dismiss.

We review the denial of a motion to remand to state court and the question of whether a plaintiff's state law claims are preempted de novo.  Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005).

Alvey argues that his claims are not preempted by § 301 of the LMRA because adjudication of those claims does not require interpretation of the CBA. He points out that the CBA lacks any reference to locker searches and argues that the grievance and arbitration procedures in the CBA apply only to alleged violations of the CBA. Therefore, according to Alvey, because the CBA is silent as to locker searches, its terms need not be interpreted and have no preemptive effect in the present case. We disagree.

In reaching this conclusion, we are guided by the language of our opinions emphasizing the breadth of the reach of § 301 of the LMRA:

> Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in addressing disputes arising out of labor contracts. In furtherance of the federal policy, when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim is preempted by federal law. Moreover, the contractual rights and obligations assumed by the parties in a collective-bargaining agreement extend beyond those expressly stated and include implied rights of reasonable performance and the duty to act in good faith. Consequently, deciding whether a party acted reasonably and in good faith in carrying out a right or obligation under the collective bargaining agreement requires a reference to the contract and an interpretation of its provisions, thereby invoking § 301 preemption.

Clark v. Newport News Shipbuilding & Dry Dock Co., 937 F.2d 934, 937 (4th Cir. 1991) (citations omitted) (internal quotation marks omitted).

Alvey's argument against preemption is further foreclosed by our holding in McCormick v. AT&T Tech., Inc., 934 F.2d 531 (1991). In McCormick, an employee filed a complaint against his former employer, "alleging that under Virginia tort law the [former employer's] actions in disposing of the contents of his [work] locker constituted intentional infliction of emotional distress, negligent infliction of emotional distress, conversion, and negligence in the care of a bailment." Id. at 533. Following the analysis of the Supreme Court in Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 406-10 (1988), we concluded that the employee's state law claims were preempted by § 301 of the LMRA because their resolution required interpretation of a CBA. McCormick, 934 F.2d at 535-37.

The analysis and holding of McCormick are directly applicable here.[3] As was the case in McCormick, an allegation of some sort of wrongful conduct is a necessary element of each of Alvey's causes of action. Invasion of privacy, in the context of the present

---

[3]When asked, at oral argument, to distinguish McCormick, Alvey's counsel contended that "West Virginia law, unlike Virginia law, which was at issue in McCormick, creates a non-negotiable right against employer-issued lockers, secured by locks provided by the employees, from being broken into essentially by the employer." We addressed this contention in footnote 2.
    Counsel further argued that the CBA in McCormick contained a statement that "all disputes between the parties must be submitted to the grievance process," whereas, in the CBA at issue here, "the term grievance is narrowly defined to include only claims of violation of the agreement." We find no reference in McCormick to CBA language that supports the distinction counsel seeks to draw.

- 7 -

case, requires an "unreasonable intrusion upon the seclusion of another."  Rohrbaugh v. Wal-Mart Stores, 212 W. Va. 358, 364 (W. Va. 2002).   Intentional or reckless infliction of emotional distress, which is synonymous with the tort of outrage in West Virginia, requires conduct on the part of the defendant that is "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."  Williamson v. Harden, 214 W. Va. 77, 81 (W. Va. 2003).  Negligent infliction of emotional distress requires negligence on the part of the defendant.  See Heldreth v. Marrs, 188 W. Va. 481, 485 (W. Va. 1992).  Moreover, West Virginia follows the general rule that the plaintiff bears the burden of proof in a tort action.  Miller v. United Fuel Gas Co., 88 W. Va. 82, 91 (W. Va. 1921).

Whether Ball's actions in searching the lockers were wrongful--either unreasonable, outrageous or negligent--cannot be determined in a vacuum.  Rather, that determination requires a consideration of the context in which the actions occurred, which necessarily includes the contractual circumstances embodied in the CBA.  Our comments concerning management's action in McCormick are particularly pertinent:

> [Management's action] is not a matter of intrinsic moral import but a question of legal authority --whether management had the lawful right to proceed as it did. The rightness or wrongness of the action has not been committed to the common law of tort, but to the legal arrangements embodied in a contractual agreement, in this case through collective bargaining.  State tort claims are preempted where reference to a collective bargaining

agreement is necessary to determine whether a "duty of care" exists or to define "the nature and scope of that duty, that is, whether, and to what extent, the [employer's] duty extended to the particular responsibilities alleged by [the employee] in h[is] complaint." Whether the actions of management personnel . . . were in any way wrongful simply cannot be determined without examining the collective bargaining agreement to ascertain the extent of any duty [the company] may have owed [the plaintiff].

McCormick, 934 F.2d at 536 (quoting IBEW, AFL-CIO v. Hechler, 481 U.S. 851, 862 (1987)) (citation omitted).

In McCormick, we also addressed Alvey's argument that the lack of a specific reference in a CBA to the activity at issue in a state tort claim precludes preemption:

> Although management's rights and responsibilities regarding employee lockers are not explicitly delineated in the agreement, a collective bargaining agreement "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960). . . .
>
> . . . The specifics as to management conduct regarding the lockers . . . need not be spelled out in all their detail and refinement for the collective bargaining agreement to be applicable. Rather, the collective bargaining agreement consists, in addition to its express provisions, of an "industrial common law --the practices of the industry and the shop-- [which] is equally a part of the collective bargaining agreement although not expressed in it." United Steelworkers, 363 U.S. at 581-82. "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. . . . The governmental nature of the collective-bargaining process demand[s] a common law of the shop which implements and furnishes the context of the agreement." Id. at 579 (quoting Cox, Reflections Upon Labor Arbitration, 72 Harv. L. Rev. 1482, 1498-99 (1959)). Thus, the agreement creates in employees and their employers implied rights and duties, the contours

of which are a matter "of federal contract interpretation." Allis-Chalmers Corp. [v. Lueck], 471 U.S. [202, 215 (1985)]. Here, interpretation of the collective bargaining agreement is essential to determine whether and to what extent [the company] owed [the plaintiff] a duty concerning his work locker. If management owed him no duty and was entitled under the agreement to [take the actions that] it did, its actions ipso facto could not have been wrongful under state law.

McCormick, 934 F.2d at 536-537 (emphasis added).

As was the case in McCormick, the CBA between Ball and the union contains several general provisions relevant to resolution of Alvey's complaints. In Article 4 of the CBA, "[Ball] retains the right to manage its business, to make all decisions, and to take whatever action it deems necessary in connection therewith, subject to the provisions of [the CBA]." Articles 15 and 21, respectively, state Ball's objective to "eliminate actual or potential health hazards" and "policy to provide a workplace free from the adverse effects of substance abuse." Although these provisions do not reference locker searches specifically, they do invest certain rights in and impose certain duties on Ball. Whether the actions of which Alvey complains fall within the scope of those rights and duties necessarily requires interpretation of the CBA, and thereby results in preemption of Alvey's state law tort claims by § 301 of the LMRA.

Accordingly, the judgment of the district court is

AFFIRMED.

- 10 -