PRESENT:  Carrico, C.J., Lacy, Hassell, Keenan, Kinser, and Lemons, JJ., and Compton, S.J.


CAVE HILL CORPORATION

v.  Record No. 020060

PHILLIP T. HIERS                           OPINION BY
                              SENIOR JUSTICE A. CHRISTIAN COMPTON
PHILLIP T. HIERS                         November 1, 2002

v.  Record No. 020070

CAVE HILL CORPORATION



             FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                    John J. McGrath, Jr., Judge


     These two appeals arise from a single action for damages alleging breach of an employment contract.  The central question is whether the trial court erred in refusing to rule that the contract was clear and unambiguous, and in submitting to a jury the interpretation of the agreement.

     To set the stage, relevant facts, mostly undisputed, that furnish the background and details of this controversy must be reviewed.  In 1993, plaintiff Phillip T. "Chuck" Hiers commenced work as a sales person for defendant Cave Hill Corporation in its division, Atlantic Fabritech, located in Rockingham County. The defendant manufactures above ground storage tanks, primarily for use in the oil and lubrication industry.

On September 9, 1998, the plaintiff and defendant, through its president and sole shareholder, Walter M. Hopkins, executed the one-page contract that is the subject of this dispute.  The agreement was "composed" by plaintiff and Hopkins, and was typewritten on a page of Atlantic Fabritech stationery.

The contract is labeled:

"EMPLOYMENT AGREEMENT

EMPLOYEE: PHILLIP T. 'CHUCK' HIERS

TITLE: SALES MANAGER

EFFECTIVE DATES: August 14, 1998 – August 1, 2003"

In a preamble, the writing stated:  "This work agreement established on August 14, 1998 between Cave Hill Corporation, d/b/a Atlantic Fabritech and Phillip T. Hiers is based on the following conditions."

Paragraph 1 provided for a $25,000 annual salary plus a cost-of-living increase.

Paragraph 2 provided, in part, for a two per cent commission to be paid plaintiff "on Atlantic Fabritech tank sales quoted, processed, generated and sold by Chuck."

Paragraphs 3 and 4 provided for use of a company vehicle and for an expense allowance.

Paragraph 5 provided:  "Thirty (30) days' notice will be given by both the employee and the employer in the case of leave or dismissal."

Paragraphs 6 and 7 provided for a vacation period, and for medical and dental insurance.

The agreement concluded with an unnumbered paragraph delineating plaintiff's job responsibilities.

During the negotiations for the contract, Hopkins told the plaintiff that one Stacey Sinnett, a former Cave Hill employee, would be reemployed. The plaintiff understood that Sinnett was to work for him in sales and in product development. However, the plaintiff learned the day after the contract was signed that Sinnett was to be the general manager of Atlantic Fabritech and that the plaintiff would have "to report to" Sinnett.

Thereafter, disagreement between plaintiff and Hopkins developed over job duties, commissions on sales, and plaintiff's overall performance of his assigned work. Specifically, plaintiff contended that, under the employment agreement, he was entitled to commissions on all sales, that is, not only on sales that he made but also on sales that Sinnett made. Hopkins took the position that the plaintiff was not entitled to a commission on Sinnett's sales.

During the period from September 1998 to May 6, 1999, the disagreement continued, with Sinnett issuing "warnings" to plaintiff about the performance of his duties. Finally, Sinnett recommended to Hopkins that plaintiff's employment be terminated because of "the way he handled several volume accounts . . . not

3

making as many sales calls . . . as he should, not travelling as much as we needed . . . [and] not having his office organized." Hopkins had observed that plaintiff "repeatedly" was late for work and that he was "working on other projects," including "selling guns and cars . . . during company business time." Additionally, according to Hopkins, plaintiff was unable "to get along with" Sinnett, would not conform to new policies established by Sinnett, and "fell out with some of the customers."

Eventually, plaintiff was discharged. In a May 6 letter to the plaintiff, Sinnett wrote: "We find it necessary to terminate your employment with Cave Hill Corporation as the Sales Manager for the Atlantic Fabritech Division effective this date. You will receive your salary for the month of May, which we will give you today."

Subsequently, plaintiff filed the present action seeking damages for breach of the employment contract. In a motion for judgment, plaintiff asserted that he improperly "was denied payment of commissions based on sales negotiated and approved by Sinnett;" that he was criticized "with unjustified and untrue accusations of inadequate job performance;" that he had been guaranteed "a fixed term of employment to run from August 14, 1998 to August 1, 2003;" and that he had been "terminated without just cause."

In a grounds of defense, defendant denied plaintiff had been employed for a fixed term. Defendant also filed a counterclaim seeking damages from plaintiff for breach of another agreement between the parties; the plaintiff had promised not to disclose certain confidential and proprietary information and not to compete with defendant upon termination.

During an August 2001 jury trial, the trial court permitted the plaintiff to testify extensively, over defendant's objection, to his "understanding" of many of the terms of the employment contract. For example, plaintiff said his "understanding" was that he "would be paid 2% commission on . . . all tank sales" not "just 2% of what [he] personally sold to a customer." Also, plaintiff testified about "the intent of the parties" as set forth in the final paragraph of the agreement relating to job responsibilities.

The trial court, over defendant's objection, permitted the jury to interpret the contract, ruling that the agreement was unclear and ambiguous. The court instructed the jury that it "must determine whether the contract is for a definite term of employment or whether it is a contract for employment that is terminable at will." The court also told the jury that just cause was required for an employer to terminate a fixed-term employment contract prior to the end of the term.

The jury found in favor of the plaintiff on his claim, fixing the damages at $260,000, and denied the counterclaim. Subsequently, in an October 2001 judgment order ruling on defendant's motion to set the verdict aside, the trial court ordered remittitur to $100,000, and otherwise entered judgment on the verdict in favor of the plaintiff.

We awarded the defendant an appeal of the court's judgment for the plaintiff. We also awarded the plaintiff an appeal of the court's action in ordering remittitur.

Although the parties dwell upon the admissibility of parol evidence with regard to those portions of the contract dealing with commissions and job responsibilities, the core of these appeals is the question whether the trial court erred in refusing to rule, as urged by defendant, that the contract was clear and unambiguous in establishing an employment that was terminable at will. Stated differently, the crux of the controversy upon review is whether the trial court erred in determining that a jury issue was created regarding the nature of the contract.

Settled principles are applicable here. "In Virginia, an employment relationship is presumed to be at-will, which means that the employment term extends for an indefinite period and may be terminated by the employer or employee for any reason upon reasonable notice." County of Giles v. Wines, 262 Va. 68,

6

72, 546 S.E.2d 721, 723 (2001). However, when the employment is for a definite period, the presumption of at-will employment is rebutted and an employee may be terminated only for just cause. Progress Printing Co. v. Nichols, 244 Va. 337, 340, 421 S.E.2d 428, 429 (1992). And, when there is a conflict in the evidence concerning the terms of an employment contract, the question whether the employment is at will or for a definite term becomes one of fact to be resolved by the jury. Miller v. SEVAMP, Inc., 234 Va. 462, 465-66, 362 S.E.2d 915, 917 (1987).

In the present case, the trial court submitted the interpretation of the contract to the jury because the court ruled that its terms were ambiguous. "An ambiguity exists when language admits of being understood in more than one way or refers to two or more things at the same time." Renner Plumbing, Heating & Air Conditioning, Inc. v. Renner, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983). However, "[c]ontracts are not rendered ambiguous merely because the parties or their attorneys disagree upon the meaning of the language employed to express the agreement." Doswell Ltd. P'ship v. Virginia Elec. and Power Co., 251 Va. 215, 222-23, 468 S.E.2d 84, 88 (1996). And, "[e]ven though an agreement may have been drawn unartfully, the court must construe the language as written if its parts can be read together without conflict." Id. at 223, 468 S.E.2d at 88.

On appeal, the plaintiff contends the trial court did not err in permitting the jury to interpret the agreement. He argues there was a conflict over the contract's terms and their meaning. In particular, he maintains he "presented evidence and argument that the Contract was for a definite term of five years ('Effective Dates: August 14, 1998 – August 1, 2003' . . .) and that, therefore, the Contract was terminable only upon just cause and with termination effective only following thirty days notice." We do not agree.

We hold that the contract was clear and unambiguous. In plain terms, the contract was effective for a designated period of time. Nevertheless, the agreement specifically was subject to certain "conditions," as mentioned in the preamble. The significant condition relevant here is that either party could terminate the contract upon 30 days notice, according to the clear terms of paragraph 5. This notice provision trumped the effect of the designated time period.

Nowhere in this writing is there any reference to a "just cause" requirement for job termination by the employer. In order to find such a requirement, one would have to insert words into the writing contrary to the elementary rule that the function of the court is to construe the contract made by the parties, not to make a contract for them. See Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984).

Consequently, we hold that the trial court committed reversible error in refusing to decide as a matter of law that the contract was one terminable at will and in permitting the jury to interpret the agreement. Because plaintiff was an at-will employee, the defendant properly terminated him upon giving 30 days notice, and the defendant's conduct in this regard is not actionable.

In view of the foregoing ruling, the parol evidence question becomes a subsidiary issue. It necessarily follows from what we already have said that the trial court also erred in admitting extrinsic evidence of the plaintiff's "understanding" to explain the terms of the agreement relating to commissions. "Parol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and unconditional." Doswell Ltd. P'ship, 251 Va. at 222, 468 S.E.2d at 88 (quoting Renner, 225 Va. at 515, 303 S.E.2d at 898).

We address the parol evidence issue only because the plaintiff did have an employment contract, albeit one that was terminable at will. Thus, he had a potential claim for failure of defendant to pay commissions due under the contract. However, we hold that paragraph 2 plainly provides for commissions on "tank sales quoted, processed, generated and sold

9

by Chuck," and not upon such sales sold by Sinnett. Therefore, plaintiff, as a matter of law, was not entitled to recover any sum for commissions on Sinnett's sales.

Consequently, the judgment in favor of the plaintiff will be reversed and final judgment will be entered here in favor of Cave Hill Corporation. This ruling renders the other appeal moot, and it will be dismissed.

Record No. 020060 – <u>Reversed and final judgment</u>.
Record No. 020070 – <u>Dismissed</u>.