# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SER SOLUTIONS, INCORPORATED,
            *Plaintiff-Appellant,*

v.

MASCO CORPORATION, d/b/a Delta
Faucet Company,
            *Defendant-Appellee.*

No. 03-2161

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-02-1636-A)

Argued: May 5, 2004

Decided: July 1, 2004

Before WILKINS, Chief Judge, NIEMEYER, Circuit Judge,
and Pasco M. BOWMAN, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Chief Judge Wilkins and Senior Judge Bowman joined.

## COUNSEL

**ARGUED:** John Charles Thomas, HUNTON & WILLIAMS, Rich-
mond, Virginia, for Appellant. Savalle C. Sims, ARENT, FOX, KIN-
TNER, PLOTKIN & KAHN, P.L.L.C., Washington, D.C., for

Appellee. **ON BRIEF:** Michael J. Lockerby, M. Christine Klein, Barry T. Meek, HUNTON & WILLIAMS, Richmond, Virginia, for Appellant. Anthony V. Lupo, Jennifer Myron, Eric S. Baxter, ARENT, FOX, KINTNER, PLOTKIN & KAHN, P.L.L.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

NIEMEYER, Circuit Judge:

Following a two-day jury trial on SER Solutions, Inc.'s claims for breach of contract and copyright infringement and on Delta Faucet Company's counterclaim for breach of contract, a jury rendered a verdict in favor of Delta Faucet on both of SER's claims and Delta Faucet's counterclaim, awarding Delta Faucet $109,765 in damages. On Delta Faucet's post-trial motion, the district court awarded it $82,618 in attorneys fees under § 505 of the Copyright Act.

On appeal, SER contends that the district court (1) erred in refusing to enforce a contractual one-year limitation period; (2) erred in admitting into evidence pre-contractual communications and negotiations, in violation of Virginia's parol evidence rule; and (3) abused its discretion in awarding attorneys fees and in determining the amount awarded. For the reasons that follow, we affirm.

I

In late 2000, Masco Corporation, d/b/a Delta Faucet Company ("Delta Faucet"), a manufacturer of faucet and showering devices, decided to change its computer system by switching to the "One World" software produced by J.D. Edwards & Co. Under "One World," Delta Faucet was able to generate its invoicing, reporting,

and sales documents. The "One World" system produced documents in the Portable Document Format ("PDF").

Several months later, Delta Faucet sought a software package to manage its documentation and to distribute its documents by e-mail, Internet, fax, and hard-copy. It discussed its needs with various companies, including SER Solutions, Inc. ("SER"), apprizing them of its desire to have the software package operate as an integrated system with the "One World" environment. SER indicated that its Synergy 2000 software would meet these needs. During the course of negotiations, Delta Faucet provided SER with output from the "One World" system, which was in PDF format, and SER informed Delta Faucet that, based on its test runs, the Synergy 2000 system "could handle the output and that [it] would not be a problem." Accordingly, Delta Faucet and SER entered into a contract dated June 6, 2001, under which SER agreed to install its Synergy 2000 integrated software package at Delta Faucet's office in Indianapolis, Indiana. Under the contract, Delta Faucet agreed to pay SER $219,530, one-half to be paid upon placement of the order and the remaining one-half "upon installation." While the contract did not fix a date by which installation would be completed, the parties established a schedule under which the target date for completion of installation would be August 1, 2001. After Delta Faucet paid SER the $109,765 as the down payment, SER retained the services of NetComm Group, Inc., a third party, to help install the Synergy 2000 system.

By October 2001, installation of only a few of the software modules had been completed, providing "limited functionality of the system." SER and NetComm continued their effort, however. When installation was still not complete by March 2002 and when the modules that had been installed began dropping data from the documents generated by the One World system, SER recommended that Delta Faucet purchase alternative software at an additional cost of $194,000 to $312,000. Unwilling to pay additional amounts for a system that was not properly converting documents in the PDF format and was otherwise not working, Delta Faucet decided to terminate the contract with SER and seek an alternative vendor, which it did. On May 14, 2002, it sent a formal letter of termination to SER, offering to return to SER its software and materials. Several months later, in August 2002, SER formally revoked Delta Faucet's license for using the Syn-

ergy 2000 system and warned Delta Faucet that further use of the software would violate its copyright. SER also demanded that Delta Faucet remit within ten days an outstanding balance of nearly $152,000.

When Delta Faucet refused SER's demand for payment, SER commenced this action for breach of contract and copyright infringement. Delta Faucet filed a counterclaim for breach of contract. After a two-day trial, the jury returned a verdict in favor of Delta Faucet on its counterclaim, awarding damages of $109,765, the down payment that Delta Faucet had paid to SER. The jury also ruled against SER on its breach of contract and copyright infringement claims. Following trial, the district court awarded Delta Faucet $82,618 in attorneys fees, pursuant to § 505 of the Copyright Act, 17 U.S.C. § 505. From the judgment entered, SER filed this appeal.

II

SER first contends that the district court erred in refusing to enforce the one-year contractual limitations period to bar Delta Faucet's counterclaim. Section 7(b) of the contract between SER and Delta Faucet provides that "[n]o action, regardless of form, arising out of any of the transactions under this Agreement may be brought by Licensee more than one year after such action [accrued]."[1] SER argues that, under the parties' informal schedule for installation of the Synergy 2000 system, SER was to complete installation by August 1, 2001. When SER had not completed installation by then, according to SER, Delta Faucet's cause of action accrued. Thus, Delta Faucet's counterclaim, filed on December 4, 2002, was more than one year after the cause of action accrued and would therefore be barred.

Delta Faucet argues that SER did not breach its contract to install Synergy 2000 until the spring of 2002, when it became apparent that SER's software modules were defective and when SER told Delta Faucet that it would cost an additional $194,000 to $312,000 to correct the problem. In response to these events, Delta Faucet sent SER

---

[1] The contract actually provides "more than one year after such action *occurred*." The parties agree, however, that "occurred" is a typographical error and that the word should be "accrued."

a letter dated May 14, 2002, terminating the contract. With respect to the installation schedule established by the parties for installing the software, Delta argues that the schedule was an informal one that was not mandated by any language in the contract and that any such schedule, in any event, was waived by the parties, as SER and its subcontractor were diligently working to complete installation well beyond the August 2001 date and Delta Faucet implicitly approved the slippage in the schedule.

We agree with Delta Faucet. There is no evidence in the record of any breach of contract in August 2001. Nor is there any evidence that at that time the parties believed that SER was breaching the contract. The first indication of serious problems with SER's product appeared in the spring of 2002. Even upon discovery of these serious problems, SER would have had to be given a reasonable opportunity to correct them. Rather than requesting that opportunity, SER demanded additional monies to complete the installation, prompting Delta Faucet to terminate the contract. It was at this point that Delta Faucet first possessed a claim against SER for breach of contract. Since Delta Faucet's counterclaim in December 2002 was filed well within one year of the breaches on which it relied for its claim, we affirm the district court's conclusion that the counterclaim was not barred by § 7(b) of the contract.

### III

SER next contends that the district court erred in admitting evidence during trial in violation of Virginia's parol evidence rule. As SER argues:

> Delta Faucet was permitted to introduce evidence of communications and negotiations that preceded the written contract. This allowed Delta Faucet to argue that SER Solutions did not fulfill contractual obligations that were *never set forth* in the contract itself. The improper introduction of this evidence substantially prejudiced SER Solutions and a new trial is required.

SER argues that because the contract was an integrated contract that "supersede[d] all prior and contemporaneous agreements, understand-

ings, negotiations, and discussions, whether oral or written," evidence of prior agreements or understandings were irrelevant under Virginia's parol evidence rule and therefore prejudicial under Federal Rule of Evidence 403.[2] The parol evidence rule provides that an integrated agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Va. Code Ann. § 8.2-202; *see also Cave Hill Corp. v. Hiers*, 570 S.E.2d 790, 794 (Va. 2002) ("Parol evidence of prior or contemporaneous oral negotiations are generally inadmissible to alter, contradict, or explain the terms of a written instrument provided the document is complete, unambiguous, and unconditional" (internal quotation marks and citation omitted)). SER asserts that the prior discussions between it and Delta Faucet conflicted with the written terms of the integrated contract, which set forth essentially only specifications for the Synergy 2000 software and never warranted that the Synergy 2000 system would function with Delta Faucet's preexisting "One World" system.

We disagree with SER's characterization of the contract between SER and Delta Faucet. That contract is much broader than SER acknowledges. It promises, in albeit ambiguous language, that the Synergy 2000 system would function "correctly" with Delta Faucet's system. The contract provides that for $219,530, SER will provide Delta Faucet with "Document Implementation, Internet Banking Integration . . . Distribution Module, System Preparation, Installation . . . Training (Onsite/Offsite), Consulting Services" and, for the first 90 days, "Maintenance and Support Services." Section 1.2.2.3 provides that SER will "create report parameters based on the data and classification requirement Customer supplies." Section 2.2 requires that Delta Faucet provide "sample data representative of data that will be processed by the system once in production mode," and §§ 2.2.1 and

---

[2]SER filed a motion *in limine* "to exclude from the trial of this matter evidence of communications and/or negotiations predating the parties' written and fully integrated License Agreement dated June 6, 2001." Delta Faucet argued in response, "[h]ere, admission of the pre-contract discussions and correspondence is necessary to explain the parties' intentions as to the functionality of the software to add meaning to the term 'correctly' and SER's obligation to 'correctly' provide certain functionality." The district court agreed with Delta Faucet and denied SER's motion *in limine*.

2.2.2 provide that Delta Faucet will provide SER with samples of reports and documents, along with its desired requirements for them. Section 1.2.2.5 provides that SER "will discuss with the customer versions of web browsers and adobe reader necessary to successfully run Web Module on client machines." In response to the samples and discussion, the contract provides that SER will install its modules to work "correctly" with Delta Faucet's systems: Section 1.2.3.1 provides that SER "will setup all equipment purchased . . . [which] will include connecting servers to Customer's network and working with Customer to establish *required data transfer connections with Customer systems*"; Section 1.2.3.2 provides that SER "will configure the system and *insure that input data is being downloaded from Customer's data provider or mainframe and processed correctly* through Reports module"; Section 1.2.3.3 provides that SER "will configure the scanning station(s) and *verify that data can be scanned, indexed and filed to Document Module*"; and § 1.2.3.4 provides that SER "*will configure the system and ensure that Web Module is operating correctly*. This includes *verifying installed client components* (web browser, Adobe Reader) and successful client access of SER Solutions, Inc. data via Web Module."

Thus, SER explicitly undertook not only to integrate its Synergy 2000 system with Delta Faucet's existing "One World" system, but also assured that SER's products would operate "correctly" as so integrated. What "correctly" means, however, is indefinite and ambiguous, and Delta Faucet was allowed to introduce evidence of what that term meant. For example, it offered an e-mail document sent by SER a week before Delta Faucet signed the contract, providing "[a]nswers to [Delta Faucet's] questions." The e-mail explained that

(1)　SER's e-Distribution module will fax, print & e-mail reports to an individual or multiple individuals.

(2)　There is *no loss of quality or clarity when converting PDF to PCL.*

(3)　*Conversion from PDF to PCL is instantaneous*; so no delay is incurred.

(4)    Overlay Development Tools: You can use tools such as Java, the Acrobat Tool Kit or PCF! Form. They will create a bmp file to store for overlay on your reports.

(5)    References for the e-Distribution module. Still working on this for you.

Delta Faucet was also allowed to introduce testimony to describe its needs and the discussions between its representatives and SER's representatives to explain what the "correctly" operating system would do and how it failed. None of this evidence contradicted any terms of the contract; it only explained what operating "correctly" meant and what a breach of the contract involved.

In these circumstances, we conclude that the evidence was properly admitted. "[T]he rule excluding parol evidence has no application where the writing on its face is ambiguous, vague, or indefinite. In such a case, the proper construction of the contract is an issue for the trier of fact, and the court should receive extrinsic evidence to ascertain the intention of the parties and to establish the real contract between them." *Cascades N. Venture Ltd. P'ship v. PRC, Inc.*, 457 S.E.2d 370, 373 (Va. 1995). The contract between SER and Delta Faucet provided that "input data . . . downloaded from Customer's data provider or mainframe" will be "processed *correctly*." The ambiguous and indefinite term "correctly," as used in the contract, is meaningful to the contracting parties only when it is considered in its larger context. Pre-contractual communications between Delta Faucet and SER made clear that a "correct" installation of Synergy 2000, as required by the contract, contemplated full functionality with the pre-existing J.D. Edwards' "One World" software that Delta Faucet had installed.

In sum, we conclude that the evidence admitted by the district court properly related to the ambiguous term "correctly" as well as to breach of the promise that the installation perform correctly and therefore did not violate the parol evidence rule. Accordingly, the district court did not abuse its discretion in admitting the testimony.

IV

Finally, SER contends that the district court abused its discretion when it awarded Delta Faucet attorneys fees under the fee-shifting

provision of § 505 of the Copyright Act, 17 U.S.C. § 505. In addition, SER argues that the court abused its discretion in awarding the specific sum of $82,618.

Attorneys fees are not awarded "as a matter of course" under § 505. *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 507 (4th Cir. 1994). In determining whether to award such fees, district courts must engage in a four-pronged inquiry:

> *First*, the district court should evaluate the motivation of the parties. While a finding of willful infringement or bad faith on the part of the opposing party properly may be considered by the district court, the presence or absence of such motivation is not necessarily dispositive. *Second*, the district court should weigh the objective reasonableness of the legal and factual positions advanced. The court may consider, for example, whether the positions advanced by the parties were frivolous, on the one hand, or well-grounded in law and fact, on the other. *Third*, the court should consider "the need in particular circumstances to advance considerations of compensation and deterrence." In evaluating this factor, the court may find relevant, among other circumstances, the ability of the non-prevailing party to fund an award. *Finally*, these enumerated factors are not intended as an exhaustive list; the district court may also weigh any other relevant factor presented.

*Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir. 1993) (citations omitted and emphases added). If a court determines to award attorneys fees under § 505, it must then determine the reasonableness of amounts requested by considering the following factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, rep-

uation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978).

After having carefully reviewed the record and considered the arguments of counsel made in their briefs and at oral argument, we conclude that the district court did not abuse its discretion either in applying *Rosciszewski* to the question of whether to award attorneys fees or in applying *Barber* to the question of their amount. Accordingly, we affirm the district court's award of attorneys fees to Delta Faucet in the amount of $82,618.

The judgment of the district court is

*AFFIRMED.*