COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Clements


ELAINE MAY HOPKINSON

                                                MEMORANDUM OPINION[*] BY
v.      Record No. 0013-09-4                    JUDGE WILLIAM G. PETTY
                                                NOVEMBER 10, 2009
COLIN GARY HOPKINSON


                  FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                            Jane Marum Roush, Judge

            (Anita Van McFadden; McFadden Law Office, PLLC, on brief), for
            appellant.  Appellant submitting on brief.

            (Colin G. Hopkinson, *pro se*, on brief).  Appellee submitting on
            brief.


        Elaine Hopkinson (wife) appeals the final decree of divorce which incorporated the

parties' marital separation and property settlement agreement ("PSA").  On appeal, wife

contends that the trial court erred by (1) superceding the parties' provision in the PSA regarding

Colin Hopkinson's (husband) duty to provide health insurance for wife, (2) awarding five

thousand dollars in attorney's fees to husband when the parties' agreement contains no provision

allowing such award, and (3) denying wife's amended motion for contempt which included her

request for attorney's fees incurred in compelling husband to comply with the trial court

discovery order.  For the following reasons, we conclude that the trial court erred by modifying

the PSA provision relating to husband's health insurance obligation and by awarding husband

five thousand dollars in attorney's fees.  We further conclude that the trial court did not err by

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

denying wife's amended motion for contempt including her request for attorney's fees. Therefore, we reverse in part, and affirm in part.

Husband raised three additional questions presented[1] and did not respond to the three issues raised by wife. He argues that the trial court erred by (1) failing to order wife to pay all of his attorney's fees, (2) hearing wife's motion *in limine*, and (3) failing to limit his obligation to provide health insurance to eighteen months. However, in husband's brief, he failed to state any principles of law, make any legal arguments, or cite to any authority as to these additional questions presented. Thus, husband has violated the provisions of Rule 5A:21(d), which requires that "the brief of the appellee shall contain . . . [t]he principles of law, the argument, and the authorities relating to each question presented." This Court has repeatedly held that "'statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926 (2006) (*en banc*) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)). We find that husband's failure to comply with Rule 5A:21(d) is significant because he has provided no legal authority upon which we can decide these issues. Jay v. Commonwealth, 275

---

[1] Because the issues raised by husband's questions presented are different from those raised by wife's questions, we consider them "additional questions" as permitted under Rule 5A:21(b). The appellee is permitted to raise additional questions presented according to Rule 5A:21(b) & (e). That rule provides that the brief of appellee shall contain:

> (b) [A] statement of any additional questions the appellee wishes to present with a clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each additional question was preserved in the trial court.

Further, Rule 5A:21(e) provides that "[t]he brief of appellee shall contain . . . [a] statement of the precise relief sought, if any." "The two rules considered together clearly provide that additional questions separate from those presented by the appellant, and any additional relief sought separate from that requested by the appellant, may be raised by the appellee in his brief." D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167 (1986).

Va. 510, 520, 659 S.E.2d 311, 317 (2008). Because husband waived these issues, we will not consider them on appeal.

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the analysis.

## I. ANALYSIS

On September 25, 2006, husband and wife entered into a property settlement agreement in anticipation of a divorce. On December 1, 2008, the trial court entered a final decree of divorce that incorporated the PSA, "superceded" the parties' agreement on health insurance contained in the PSA, ordered spousal and child support pursuant to the PSA, ordered wife to pay five thousand dollars of husband's attorney's fees, and denied wife's contempt motion. This appeal followed.

In a divorce proceeding, Code § 20-109.1 authorizes the trial court, in its discretion, to

> affirm, ratify and incorporate by reference in its decree dissolving a marriage or decree of divorce . . . any valid agreement between the parties . . . concerning the conditions of the maintenance of the parties, or either of them . . . or establishing or imposing any other condition or consideration, monetary or nonmonetary.

If a court exercises its discretion to incorporate an agreement described in Code § 20-109.1, "or thereafter enforces the resulting decree," White v. White, 257 Va. 139, 144, 509 S.E.2d 323, 325 (1999), Code § 20-109(C) provides that "no decree or order directing the payment of . . . counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract.'" This Court has stated that subsection (C) "restricts the judge to decreeing according 'to the terms' of the agreement." Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005).

Code § 20-109(C) prohibits a trial judge from "grant[ing] relief in derogation of the terms of the parties' agreement." Id. Or, put in other words, it "requires the trial judge to examine the parties' agreement to ascertain whether the relief sought by the moving party is encompassed within the terms of the agreement." Id. at 63, 608 S.E.2d at 509 (citing White, 257 Va. at 144-45, 509 S.E.2d at 326). Accordingly, we have stated that the court's function is to

> "construe the contract made by the parties, not to make a contract for them. The question before the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares."

Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005) (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). "The trial court's interpretation of the PSA is an issue of law that we review *de novo*." Stacy v. Stacy, 53 Va. App. 38, 43, 669 S.E.2d 348, 350 (2008) (*en banc*). With these principles in mind, we review the legal issues raised by wife.

### A. Health Insurance

The provisions dealing with health insurance in the PSA provided as follows:

> GENERAL: The Husband *shall* maintain major medical and hospitalization insurance for the benefit of the Wife and the minor child of the parties.

> \* \* \* \* \* \* \*

> TERMINATION: The insurance for the benefit of the Wife shall be terminated upon either the remarriage of the Wife or the acceptance of the Wife of coverage under another health insurance plan.

> \* \* \* \* \* \* \*

> The parties agree that should health insurance no longer be available to the Husband or should health insurance become available to the Wife, the *parties will negotiate* this portion of this agreement at that time. The parties agree that neither shall take

- 4 -

any action causing the termination of the family's or parties' eligibility.

(Emphasis added).

Both parties concede that once the divorce decree was entered, wife would no longer be eligible for health insurance through husband's employer. In interpreting the agreement, the trial court concluded that husband was responsible for providing wife health care coverage only if it was available through his employer, including post-divorce COBRA coverage[2] because the wife was otherwise "uninsurable." Thus, the trial court included a paragraph in the final order that "supersedes the health insurance language in [the agreement]." That paragraph limited husband's responsibility to provide insurance to insurance available to him through his employer or COBRA coverage:

> Husband is responsible for Wife's health insurance so long as it available to him through his employment. This includes Cobra and the Husband is responsible for the cost of Cobra. Once Cobra ends (if health insurance for the wife is not available to the husband) the Husband's responsibility ends and he has no further responsibility to provide insurance or the cost of insurance. That the Husband shall promptly cooperate with the Wife obtaining Cobra coverage [sic].

---

[2] The United States Supreme Court has explained this coverage as follows:

> [A]n employer who sponsors a group health plan [is required] to give the plan's "qualified beneficiaries" the opportunity to elect "continuation coverage" . . . when the beneficiaries might otherwise lose coverage upon the occurrence of certain "qualifying events," including . . . divorce or legal separation from the covered employee. Thus, a "qualified beneficiary" entitled to make a COBRA election may be a "covered employee" . . . , or a covered employee's spouse . . . who was covered by the plan prior to the occurrence of the "qualifying event."

Geissal v. Moore Medical Corp., 524 U.S. 74, 79-81 (1998). The maximum period of continued coverage is 36 months, and the beneficiary is responsible for all costs of continued coverage. Id.

Stating that it was "superceding" the PSA insurance provisions, the trial court rewrote the general provision to apply only to husband's employer-provided health insurance and then added a third contingency to the termination provision—that husband's obligation ends if his employer-provided insurance (including any COBRA extension) is no longer available to the wife.

Wife argues that the trial court erred by modifying the language of the PSA so that husband's obligation to provide her with health insurance terminated when his employer-provided COBRA coverage ended. "In reviewing the agreement, we must gather the intent of the parties and the meaning of the language . . . from an examination of the entire instrument, giving full effect to the words the parties actually used." Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986).

The plain language of the health insurance provision in the PSA begins by requiring husband to unequivocally provide health insurance to wife. The termination paragraph, which appears immediately after the husband's general obligation, states that husband's obligation will end if one of two possible occurrences materialize: (1) wife remarries, or (2) wife accepts coverage under another health insurance policy. Finally, the provision providing that the parties agree to renegotiate the health insurance provision "should health insurance no longer be available to the Husband," neither limits the term "available" to employer-provided health insurance nor does it authorize termination of his obligation.

Despite this language, the court interpreted the health insurance provision in the PSA as follows:

> I think the husband is responsible for health insurance if it's available through his employer, and I think that would include any COBRA coverage. But I think once the COBRA coverage is up, that that ends the husband's responsibilities, because it ends upon her remarriage or her acceptance of coverage under another health insurance plan. So I think it's incumbent upon the wife to get

employment between now and then if COBRA is available.  I think the agreement anticipates that coverage might not be available.

Where the parties have entered into an agreement, Code § 20-109(C) limits the trial court's authority to enter a judgment or decree; that is, the decree must conform with the intent of the parties as expressed in the parties' agreement.  Rutledge, 45 Va. App. at 67, 608 S.E.2d at 509.  It precludes the trial court from entering a decree that is contrary to the PSA.  Blackburn v. Michael, 30 Va. App. 95, 100, 515 S.E.2d 780, 783 (1999).  Moreover, Code § 20-107.1 subjects "any maintenance and support . . . to the provisions of [Code] § 20-109."

Husband argued, and the trial court cited several times, the fact that wife has had some medical problems that might limit her insurability.  Husband further argued that the health insurance provision was intended as a short-term provision until wife was able to provide her own health insurance.  However, we are not concerned with "what the parties claim they might have said, or should have said" because that "cannot alter what they actually said." Rutledge, 45 Va. App. at 65, 608 S.E.2d at 509.  Here, the trial court superceded the parties' agreement on health insurance and rewrote that provision to comply with husband's alleged intent despite the clear language to the contrary.  Because the final decree was not in accordance with the terms of the PSA, it violated Code § 20-109(C).  Therefore, we must reverse.

## B.  Attorney's Fees

Both husband and wife employed attorneys to assist them through these divorce proceedings, and both husband and wife filed motions and discovery requests that required the other to incur attorney's fees.  Further, both asked the trial court to award them attorney's fees under the trial court's general equitable power to award attorney's fees.  The trial court awarded husband five thousand dollars in attorney's fees and did not award wife any attorney's fees. Wife complains that the trial court erred in awarding husband attorney's fees.

The trial court has the general authority to award attorney's fees in its discretion "as equity and justice may require." Code § 20-99(5); see also Code § 20-79(B); Ingram v. Ingram, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976). This rule, however, does not prevent the parties from entering into a contract that adopts a provision that limits the responsibility of attorney's fees to the losing or defaulting party in disputes involving the contract. Code §§ 20-109.1 and 20-109; see West Square, L.L.C. v. Commc'n Techs., 274 Va. 425, 433, 649 S.E.2d 698, 702 (2007). Indeed, here, the parties' contract discussed the issue of attorney's fees and resolved it as follows:

> The parties agree that any costs, including but not limited to counsel fees, court costs, investigation fees, and travel expense, incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action to compel compliance herewith, *shall be borne by the defaulting party*. Any such costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants, or provisions of this Agreement shall be borne by the party seeking to enforce compliance.

(Emphasis added).

This language allows for attorney's fees in two instances: (1) a party defaults and the other party is forced to incur attorney's fees compelling the defaulting party to comply, or (2) a party is forced to defend the other party's unsuccessful attempt to enforce the agreement. The agreement does not provide for the payment of attorney's fees in any other instance. "The express reference to attorney's fees for these two particular proceedings implies the preclusion of attorney's fees in other instances under the maxim, *expressio unius est exclusio alterius*." Rutledge, 45 Va. App. at 65, 608 S.E.2d at 508. In other words, "the omission of a particular covenant or term from a contract reduced to writing shows an intent to exclude it." Bentley Funding Group v. SK&R Group, 269 Va. 315, 330, 609 S.E.2d 49, 56 (2005). "In order to find in this agreement a requirement for attorney's fees in other unspecified instances, we 'would

- 8 -

have to insert words into the writing contrary to the elementary rule that the function of the court is to construe the contract made by the parties, not to make a contract for them.'" Rutledge, 45 Va. App. at 65, 608 S.E.2d at 508 (quoting Cave Hill Corporation v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002)). Nonetheless, the trial court held:

> I [do not] think that the terms of the provision here of the contract actually kicks in in terms of – there was not a no-contest provision in the agreement.
>
> It does say the agreement may be submitted to the court by either party. I'm not sure that his trying to get it incorporated into an order of this court and her challenging that is a violation of the agreement. It talks about the defaulting party; *I [cannot] say that [she is] a defaulting party within the terms of this agreement*.
>
> However, I can equitably apportion attorney's fees, and I am going to order that she pay $5,000 of the husband's attorney's fees within 60 days.

(Emphasis added).

Clearly, Code § 20-109(C) reflects the General Assembly's intent to give the parties the right to determine their liability to each other before walking through the courthouse door. As a result, we subject property settlement agreements to the same "rules of construction applicable to contracts generally." Rutledge, 45 Va. App. at 64, 608 S.E.2d at 508. Accordingly, we "'cannot read into contracts language which will add to or take away the meaning of words already contained therein.'" Id. (quoting Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984)). Therefore, because the PSA limited the award of attorney's fees incurred in enforcing the agreement against the defaulting party, and the trial court specifically found that wife was not the defaulting party, we hold that the trial court erred in awarding husband five thousand dollars for attorney's fees.

C.  Wife's Amended Motion for Contempt

Lastly, wife argues that the trial court erred in denying her amended motion for contempt, which included a request for attorney's fees incurred in pursuing her motion to compel.  Whether to grant a motion for contempt is within the discretion of the trial court that will not be reversed on appeal unless wife can show an abuse of that discretion.  Wells v. Wells, 12 Va. App. 31, 36, 401 S.E.2d 891, 894 (1991).  Here, the trial court ordered husband to comply with wife's discovery requests by November 3, 2008.  Husband substantially complied but omitted some records from 2006.  Wife filed an amended motion for contempt and in opposition of award of attorney's fees, and the trial court denied her motion.  On the record before us we cannot say that the trial court's judgment was an abuse of discretion.  Furthermore, for the reasons stated above, the trial court had no authority to grant wife attorney's fees because the PSA limits attorney's fees awards to situations involving defaulting parties.  There is no evidence in the record that husband defaulted under the PSA.  Therefore, we hold that the trial court did not err in denying wife's amended motion for contempt.

II.  CONCLUSION

For the foregoing reasons, we conclude that the trial court lacked the authority to supercede the parties' agreement on health insurance coverage and award attorney's fees to husband in the amount of five thousand dollars.  Therefore, we reverse and remand to the trial court for modification of the final decree in accordance with this opinion.  Further, we affirm the trial court's decision to deny wife's amended motion for contempt.

Affirmed in part,
reversed in part,
and remanded.