## *VIRGINIA:*

*In the Court of Appeals of Virginia on*   **Tuesday**   *the*  **25th**  *day of*  **June, 2019**.

Peter Anthony DeLuca,                                                                                    Appellant,

 against            Record No. 1158-14-3
                    Circuit Court No. CL12008452

Tracie Ondich DeLuca,                                                                                    Appellee.

From the Circuit Court of Amherst County

By motion filed June 4, 2019, appellant Peter Anthony DeLuca, moved this Court to vacate its mandate and withdraw its unpublished opinion in Record Number 1158-14-3 on the ground that the order of the Circuit Court of Amherst County entered May 22, 2014, from which appellant noted his appeal, was not a final order, thereby depriving this Court of subject matter jurisdiction and rendering its opinion void *ab initio*.  Appellee filed a response in opposition.  Although appellant had represented the circuit court order to be final and appealable, this Court has determined that it lacked subject matter jurisdiction to consider the appeal in Record Number 1158-14-2 and that, thus, its decision in that matter is void *ab initio*.  Accordingly, appellant's motion is granted, the unpublished opinion of this Court dated May 19, 2015 in Record No. 1158-14-3 is withdrawn, and the mandate associated therewith is vacated.  Because this Court lacks subject matter jurisdiction, the appeal in Record Number 1158-14-3 is dismissed.

A Copy,

Teste:

*original order signed by the Clerk of the
Court of Appeals of Virginia at the direction
of the Court*

Cynthia L. McCoy, Clerk

Present:    Chief Judge Huff, Judges Petty and McCullough
Argued by teleconference


PETER ANTHONY DELUCA

                                         MEMORANDUM OPINION[*] BY
v.    Record No. 1158-14-3               CHIEF JUDGE GLEN A. HUFF
                                            MAY 19, 2015
TRACIE ONDICH DELUCA


FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge

Julie Hottle Day[1] (Michael A. Ward; Michael A. Ward, P.C., on
briefs), for appellant.

Brian R. Moore (Phillips, Morrison, Johnson & Ferrell, on brief),
for appellee.


Peter Anthony Deluca ("husband") appeals an order of the Amherst County Circuit Court

("trial court") granting Tracie Ondich Deluca ("wife") $4,373 per month in spousal support and

finding husband failed to meet previous spousal support obligations in the net amount of

$121,976.  On appeal, husband raises four assignments of error:

> 1. The [t]rial [c]ourt erred in ruling that the [h]usband's
>    obligation(s) [p]ursuant to paragraph 4 of the parties'
>    Separation and Property Settlement Agreement [("agreement")]
>    was a monetary obligation, namely, an [o]bligation to pay a
>    monthly monetary sum certain to [wife], as opposed to an
>    obligation for [h]usband to provide a lifestyle for [w]ife.
>
> 2. Assuming arguendo that the [t]rial [c]ourt did not err when it
>    [r]uled that the [h]usband's obligation(s) pursuant to paragraph
>    4 of the parties' [agreement] was a monetary sum certain to
>    [w]ife, as opposed to an obligation to provide a lifestyle for

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Julie Hottle Day participated in oral argument; she replaced Michael A. Ward after all
briefs were submitted.

[w]ife, then the [t]rial [c]ourt erred in the amount calculated as the monthly monetary sum certain owed by [h]usband to [w]ife because, in making its calculation, the [t]rial [c]ourt erroneously used as [h]usband's income for the purpose of calculating his support obligation amounts he earned while on military deployment – when his income was both artificially high and also non-taxable – rather than using [h]usband's regular (non deployment) military pay.

3. Assuming arguendo that the [t]rial [c]ourt did not err when it [r]uled that the [h]usband's obligation(s) pursuant to paragraph 4 of the parties' [agreement] was a monetary obligation, namely, an obligation to pay a monthly monetary sum certain to [w]ife, as opposed to an obligation to provide a lifestyle for [w]ife, then the [t]rial [c]ourt erred by failing to take into account that the language of paragraph 4 of the parties' [agreement] which states that the support of [w]ife is in consideration of the "the need of [w]ife to educate and nurture the minor child" and that at the time of the trial the parties' child was emancipated and not a minor.

4. Assuming arguendo that the [t]rial [c]ourt did not err when it [r]uled that the [h]usband's obligation(s) pursuant to paragraph 4 of the parties' [agreement] was a monetary obligation, namely, an obligation to pay a monthly monetary sum certain to [w]ife, as opposed to an obligation to provide a lifestyle for [w]ife, then the [t]rial [c]ourt erred in awarding [w]ife support arrears prior to the entry of the Final Decree of Divorce when there was no specific reservation of jurisdiction in the Final Decree of Divorce for the court to make a determination of arrears.

In an assignment of cross-error, wife asserts that the "trial court erred when it denied [w]ife's request for attorney's fees in reliance on Rutledge v. Rutledge, 45 Va. App. 56, 608 S.E.2d 504 (2005) and Code § 20-109." For the following reasons, this Court affirms the trial court's rulings.

## I. BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). "That principle

- 2 -

requires us to 'discard the evidence' of the [husband] which conflicts, either directly or inferentially, with the evidence presented by [wife] at trial." Id. (quoting Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002)).  So viewed, the evidence is as follows.

Husband and wife were married on October 3, 1992.  On January 9, 1995, husband and wife had a son ("N.D.").  On January 25, 2008, husband and wife entered into the agreement.  Ultimately, the agreement was incorporated into but not merged with the final divorce decree.  Under the agreement, wife received sole legal custody of N.D.  Additionally, the agreement stated "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and nurture [N.D.]."  Moreover, the agreement provided that "[e]ach party shall pay his or her attorney's fees and the parties shall divide equally the costs of any uncontested divorce proceeding filed by either [h]usband or [w]ife."

On January 3, 2013, husband and wife legally divorced.  Upon wife's motion, on May 29, 2013, the trial court issued a rule to show cause why husband should not be found in contempt for failing to comply with the spousal support obligation in the agreement.  On November 19, 2013, the trial court issued an opinion letter to the parties and determined under Code § 20-109(C) that "because the [agreement] does not set a specific amount of spousal support to be paid each month, the court must perform a retrospective analysis to determine whether or not [husband] has complied with this portion of the decree."

An evidentiary hearing regarding the matter occurred on April 15, 2014.  Wife testified that for many years the family lived abroad but decided to purchase a farm in Amherst County.  Moreover, wife indicated that N.D., while no longer a minor, still lives at the farm while attending college at Randolph-Macon.  Husband testified that purchasing the farm represented a

"change in the life-style that the family had." Specifically, husband stated "[w]e liquidated mutual fund holdings and savings in order to pay the down payment. It was definitely a life-style change." Additionally, husband testified that "[i]t was a decision to make a living, a life on a permanent place that was our own, not traveling from place to place to place as we had been doing in the army to that point in time."

Moreover, husband testified that his military pay fluctuated during the period after the parties signed the agreement. Specifically, husband indicated that his "military pay fluctuates with allowances according to whether [he was] deployed away from the United States in a combat zone or a hostile fire zone." Consequently, while deployed husband's income "was federally tax-free" and he received "hostile fire pay, separation pay, and other allowances that added considerably to [his] paycheck."

On May 22, 2014, the trial court entered a final order incorporating its opinion letter dated April 25, 2014. In its opinion letter, the trial court indicated that the parties lived in many different places due to husband's military assignments but decided to settle in Amherst County "in order to provide more stability for wife and N.D." Furthermore, the trial court determined that "at the time the parties entered into the agreement in 2008, they were seeking to ensure that [wife] and [N.D.] would continue to live in the manner as to which they were accustomed and currently being supported by [husband]." Accordingly, the trial court determined that "the key period of time is the year prior to the time that the agreement was signed" and "focused on the monetary support received by [wife] in 2007 and the lifestyle she had during that year." In making its ruling, the trial court explained

> Exhibit E sets forth the amounts that were paid to [wife] from
> [husband] during 2007. The average monthly net amount she
> received during the thirteen months beginning December 29, 2006
> and December 31, 2007 is $4,373 per month. Her lifestyle during
> that period of time was the lifestyle of an upper-middle class

- 4 -

family in Central Virginia. The type of automobile driven by [wife], the type of home she lived, the type of grocery store where she shopped, and the general lifestyle of the parties supports this finding.

The average net amount received by [wife] during this thirteen month period is the amount leftover after the payment of the mortgage, monthly expenses of [husband], and child support. Accordingly, I find that the basic level of support that [wife] can expect each month is $4,373 per month. During the period from February 1, 2008, through May 4, 2010 [husband] paid or exceeded this amount. From May 4, 2010 until the present [husband] has paid 4,373 or more for only one month. Accordingly, I find that [wife] should have been paid a total of $214,277 for thirteen months from May 4, 2010 through April 1, 2014. I find that the actual amount she was paid was $92,301. The difference is $121,976.

Based on its analysis, the trial court ordered husband to pay $4,373 per month in spousal support payments and previous spousal support obligations in the net amount of $121,976. Additionally, the trial court denied wife's request for an award of attorney's fees and reasoned that "[t]he [agreement] does not provide for an award of attorney's fees except under paragraph 17 it provides that the parties shall divide equally the cost of any uncontested divorce proceeding."

On May 21, 2014, husband filed a motion to reconsider the trial court's letter opinion. On May 22, 2014, the trial court entered a final order consistent with its April 25, 2014 letter opinion and overruled husband's motion. This appeal followed.

II. Analysis

1. Interpretation of the Agreement

On appeal, husband contends that the trial court erred by ruling that husband's obligation under paragraph 4 of the agreement was a monetary obligation, namely an obligation to pay a monthly monetary sum to wife, as opposed to an obligation for husband to provide a lifestyle for wife. Specifically, husband argues that in its February 4, 2014 order, the trial court declined to award a specific amount of support for wife under Code § 20-109 and improperly overturned this

order in the later proceedings. Additionally, husband asserts that the trial court improperly awarded an arbitrary dollar amount on husband's obligations and should have considered wife's lifestyle during their marriage.

Husband first argues that the trial court originally declined to determine a spousal support award under Code § 20-109 at the November 15, 2013 hearing and then improperly overruled its order. This argument, however, is not supported in the record. Code § 20-109(C) provides, "no decree or order directing payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract." After considering this language, the trial court stated "because the property settlement agreement dated January 25, 2008 does not set a specific amount of spousal support to be paid each month, the court must perform a retrospective analysis to determine whether or not [husband] has complied with this portion of the decree." Accordingly, rather than ordering that no specific amount of support was required pursuant to the agreement, the trial court deferred such ruling pending a retrospective analysis.

Next, husband asserts that the trial court improperly interpreted paragraph 4 of the agreement and awarded an arbitrary dollar amount. "Property settlement agreements are contracts, and the rules of interpretation for contracts in general apply." Recker v. Recker, 48 Va. App. 188, 192, 629 S.E.2d 191, 193 (2006). Thus, "[o]n appeal, the Court reviews a trial court's interpretation of a contract *de novo*." Plunkett v. Plunkett, 271 Va. 162, 166, 624 S.E.2d 39, 42 (2006) (citing Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002)). Paragraph 4 of the agreement provides, "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and nurture [N.D.]."

When interpreting an agreement that "is unambiguous, its meaning and effect are questions of law. Ordinary words are given their ordinary meaning when constructing the

contract." Recker, 48 Va. App. at 192, 629 S.E.2d at 193 (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). Moreover, in Virginia, "'[i]t is axiomatic that when the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning.'" Cabral v. Cabral, 62 Va. App. 600, 609-10, 751 S.E.2d 4, 9 (2013) (quoting TravCo Insur. Co. v. Ward, 284 Va. 547, 552, 736 S.E.2d 321, 325 (2012)). Further, "[t]hat meaning . . . derives from the text as well as the context of the agreement." Id.

Husband argues that the language "in the manner to which she is accustomed and is currently being supported" does not specify any monetary amount and contends that wife "was being supported by [h]usband in the usual and regular way . . . which she was supported when the parties signed their [agreement]." Accordingly, husband argues it was error to fix a dollar amount on husband's obligations under the agreement.

At trial, however, the trial court concluded that "at the time the parties entered into the agreement in 2008, they were seeking to ensure that [wife] and [N.D.] would continue to live in the manner as to which they were accustomed and currently being supported by [husband]." At the evidentiary hearing, both parties agreed that the couple experienced a change in lifestyle after purchasing the Amherst property in 2006. The trial court determined wife received a monthly average of $4,373 during the thirteen months immediately preceding execution of the agreement and that her lifestyle during that period was that of an upper-middle class family in central Virginia. Moreover, the trial court found from May 4, 2010 until the trial, husband paid $4,373 to wife only once. After considering all of these factors, the trial court ruled that an award of $4,373 in spousal support was appropriate based on the plain and ordinary meaning of the language of the agreement.

The agreement provided that "[h]usband shall support [w]ife in the manner to which she is accustomed and is currently being supported, recognizing the need of [w]ife to educate and

- 7 -

nurture [N.D.]." During the time immediately preceding the execution of the agreement, wife received a monthly average of $4,373 from husband. Husband, however, failed to continue making the same monthly payments after May 4, 2010. We agree that the agreement is unambiguous and the plain and ordinary meaning of the language of the agreement required husband to pay a sum certain in monthly spousal support and that the trial court's determination of that amount was supported by the evidence. Accordingly, husband failed to support wife in the manner to which she was accustomed at the time parties signed the agreement. Therefore, the trial court did not err in awarding a specific dollar amount for spousal support pursuant to paragraph 4 of the agreement.

## 2. Rule 5A:20(e)

Husband presents three additional assignments of error on appeal. Specifically, husband contends the trial court erred in calculating the amount of income husband owed wife; in failing to consider that N.D. was emancipated and not a minor at the time of the trial; and in awarding wife support arrears covering a period of time prior to the entry of the final decree of divorce. Husband fails to cite any authority or principles of law relating to these assignments of error.

Rule 5A:20(e) provides, "the opening brief of appellant shall contain: . . . [t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Moreover, "Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and the authorities relating to each question presented. Unsupported assertions of error 'do not merit appellate consideration.'" Jones v. Commonwealth, 51 Va. App. 730, 734, 600 S.E.2d 343, 345 (2008) (quoting Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992)).

Furthermore, "[i]f the parties believed that the [trial court] erred, it was their duty to present that error to us with legal authority to support their contention." Fadness v. Fadness, 52

Va. App. 833, 851, 667 S.E.2d 857, 866 (2008). In the current matter, husband fails to cite any authority in his argument regarding his remaining assignments of errors. Accordingly, husband "waived [his] right to have these issues reviewed by this Court." Id.

### 3. Attorney's Fees

Lastly, wife asserts that the trial court erred by denying wife's request for attorney's fees. Specifically, wife argues that the agreement does not address the parties' rights in enforcement proceedings. She argues, therefore, that the trial court erred in finding that the absence of an applicable fee provision in the agreement prevented the trial court from awarding fees. "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). The key to determining a "proper award of [attorney's] fees is reasonableness under all the circumstances." Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 29 (2001).

The trial court relied on this Court's opinion in Rutledge v. Rutledge, 45 Va. App. 56, 608 S.E.2d 504 (2005), and Code § 20-109(C) in denying wife's request for attorney's fees. Wife argues that Rutledge is distinguishable because that case "involved a modification of support" and "[t]he parties' agreement expressly provided for attorney's fees in certain circumstances that did not include modification proceedings." Conversely, she reasons that "the agreement in this case does not address anything remotely related to future enforcement proceedings."

In Rutledge, this Court affirmed the trial court's refusal to award attorney's fees in a modification of spousal support proceeding when the parties' property settlement agreement expressly allowed an award of attorney's fees in two specific circumstances, neither of which were modification of spousal support proceedings. 25 Va. App. at 65, 608 S.E.2d at 508.

Similarly, in the current matter, the agreement indicates that "[e]ach party shall pay his or her attorney's fees and the parties shall divide equally the costs of any uncontested divorce proceedings filed by either [h]usband or [w]ife." Consequently, the agreement in the current case contemplates an award of fees in certain limited circumstances, but does not provide for an award of attorney's fees in an enforcement proceeding.

Code 20-109(C) provides that in cases where the parties have executed a property settlement agreement prior to the entry of a final decree of divorce, "no decree or order directing the payment of . . . counsel fee[s] . . . shall be entered except in accordance with that stipulation or contract." Moreover,

> [i]n order to find in this agreement a requirement for attorney's fees in other unspecified instances, we "would have to insert words into the writing contrary to the elementary rule that the function of the court is to construe the contract made by the parties, not to make a contract for them."

Rutledge, 45 Va. App. at 65, 608 S.E.2d at 508 (quoting Cave Hill Corp. v. Hiers, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002)). Consequently, awarding wife attorney's fees in the instant enforcement proceeding would violate Code § 20-109(C) and contradict this Court's decision in Rutledge. Accordingly, this Court finds that the trial court did not err in denying wife's request for attorney's fees.

### III. CONCLUSION

Based on the foregoing, this Court finds that the trial court did not err by ruling that husband's support obligation under paragraph 4 of the agreement included an obligation to pay a monthly monetary sum to wife. Additionally, husband's second, third, and, fourth assignments of error are procedurally barred under Rule 5A:20(e). Lastly, this Court holds that the trial court

- 10 -

did not err in denying wife's request for attorney's fees, and this Court similarly declines to award fees and costs.  Accordingly, this Court affirms the trial court's rulings.

<u>Affirmed.</u>